**Rasaq Oladimeji SHITTU, Petitioner,**

v.

**Kenneth J. ELWOOD, District Director, INS Philadelphia, Immigration & Naturalization Service, Executive Office for Immigration Review, Attorney General, U.S.A., Respondents.**

No. CIV.A. 02–0682.

United States District Court,
E.D. Pennsylvania.

May 14, 2002.

---

Rasaq Qladimeji Shittu, Selinsgrove, PA, pro se.

Stephen J. Britt, U.S. Attorney's Office, Philadelphia, PA, for respondents.

### *OPINION*

SCHILLER, District Judge.

This petition for a writ of habeas corpus raises the unsettled legal question of whether a permanent U.S. resident who was ordered deported while his application for naturalization was pending can claim the protection of the status of "national of the United States" under § 101(a)(22) of the Immigration and Naturalization Act.

Petitioner Rasaq Oladimeji Shittu ("Shittu"), a citizen of Nigeria and until May 6, 2002 a permanent resident of the United States, petitioned for a writ of habeas corpus on February 8, 2002, claiming that he could not be deported as an aggravated felon alien while his application for naturalization was pending. Also before this Court is Shittu's Motion for Injunctive Relief and Temporary Restraining Order/Stay of Deportation. For the reasons that follow, I will deny the petition for a writ of habeas corpus and deny Shittu's motion as moot.

## I. BACKGROUND

Shittu was legally admitted to the United States in 1990 as a permanent resident. On August 13, 1997, he applied for naturalization. While his application was still pending, he was convicted in the U.S. District Court for the Central District of Illinois of possession with intent to distribute heroin and sentenced to 37 months in prison. Because this crime is an aggravated felony under 8 U.S.C. § 1101(a)(43), the Government brought a removal proceeding pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). On February 27, 2001, the Immigration Judge ordered Shittu's removal to Nigeria, and the Board of Immigration Appeals

subsequently affirmed the order. On February 8, 2002, Shittu petitioned this Court for a writ of habeas corpus, alleging that his pending application for citizenship makes him a "national of the United States," that the Immigration and Naturalization Service ("INS") violated its own regulations by bringing a removal proceeding against a national, and that the INS failed to prove his alienage by clear and convincing evidence. On May 6, 2002, while this petition was still pending, Shittu was deported to Nigeria.

## II.  DISCUSSION

### A.  Jurisdiction

Although this Court generally lacks jurisdiction under 8 U.S.C. § 1252(a)(2)(C) to review a final order of removal, the Court retains habeas jurisdiction to review removal orders under 28 U.S.C. § 2241. *INS v. St. Cyr,* 533 U.S. 289, 314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *Sandoval v. Reno,* 166 F.3d 225, 231 (3d Cir.1999). Although Shittu is no longer "in custody," he was "in custody" when he filed his petition, and that is all that the law requires. 28 U.S.C. § 2241(c); *Chong v. Dist. Dir. INS,* 264 F.3d 378, 382–83 (3d Cir.2001). Habeas review is limited, of course, to errors of law. *St. Cyr,* 533 U.S. at 306–07, 121 S.Ct. 2271; *Sciglitano v. Ashcroft,* Civ.No. 00–0083, 2002 WL 461987, *3, 2002 U.S. Dist. LEXIS 4988, at *10 (Mar. 25, 2002). Therefore this Court has jurisdiction to review Shittu's claim that his pending application for citizenship makes him a "national of the United States" not subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii).

### B.  Mootness

■ The fact that Shittu has been deported does not moot his petition, because an Article III, § 2 case or controversy continues to exist. As a result of his removal as an "aggravated felon" alien, Shittu is ineligible for readmission to the United States. 8 U.S.C. §§ 1182(a)(2)(A)(i), (a)(9)(A). Shittu's future inadmissability is a concrete and ongoing "collateral consequence" of his deportation, which preserves his Article III standing. *See Spencer v. Kemna,* 523 U.S. 1, 12, 121 S.Ct. 2023, 150 L.Ed.2d 72 (1998) ("it is an 'obvious fact of life that most criminal convictions do in fact entail adverse collateral consequences' ") (quoting *Sibron v. New York,* 392 U.S. 40, 55, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)); *Chong,* 264 F.3d at 386 (holding that habeas petitioner's inability to reenter United States for ten years after deportation was sufficient collateral consequence to render her petition justiciable).

### C.  Petitioner's Status as a "National"

The Immigration and Nationality Act of 1952 ("INA") defines "alien" as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). Section 1101(a)(22) defines "national of the United States" as either a citizen or a "person who, though not a citizen of United States, owes permanent allegiance to the United States." Shittu argues that the combination of his long-time residence in the United States and his naturalization application objectively demonstrate his "permanent allegiance" in satisfaction of the statutory definition of "national."

The term "national of the United States" historically referred to the noncitizen inhabitants of U.S. territories, such as the Philippines, Puerto Rico, and Guam. *See Rabang v. INS,* 35 F.3d 1449, 1452 n. 5 (9th Cir.1994). Congress first defined the term in the Nationality Act of 1940 as either a U.S. citizen or a non-alien "who, though not a citizen of United States, owes permanent allegiance to the United States." 76 Pub.L. No. 853, §§ 101(a), (b),

204, 54 Stat. 1137, 1137, 1139–40 (1940); 7 CHARLES GORDON, STANLEY MAILMAN, & STEPHEN YALE-LOEHR, IMMIGRATION LAW AND PROCEDURE § 91.01[3][b], at 91–5 (rev. ed. 2001). This definition of "national of the United States" was incorporated into the INA. 8 U.S.C. § 1101(a)(22).

Today, the number of inhabitants of U.S. territories has dwindled. The numerous inhabitants of Puerto Rico and Guam gained U.S. citizenship in 1940 and 1950, respectively. *Rabang*, 35 F.3d at 1450 n. 1. The Philippines gained independence in 1946. *Olegario v. United States*, 629 F.2d 204, 214 n. 7 (2d Cir.1980). The only remaining "outlying possessions" of the United States are American Samoa and Swains Island. 8 U.S.C. § 1101(a)(29). Based on the historical origins of the term "national," the Government argues that "national" status should be confined to the relatively few residents of these territories. Consequently, the Government argues, Shittu is an alien subject to deportation.

While 8 U.S.C. § 1408(a) expressly provides that persons born in these outlying possessions are U.S. nationals, the circuits are split on whether "national" status is limited to such person; certainly § 1101(a)(22) permits a broader interpretation. Courts agree that lengthy residency alone does not suffice to confer the status of "national." *See, e.g., Sierra–Reyes v. INS*, 585 F.2d 762, 764 (5th Cir. 1978) (rejecting as "frivolous" 20–year permanent U.S. resident's claim of "national" status where he had never filed a petition for naturalization); *Carreon–Hernandez v. Levi*, 543 F.2d 637 (8th Cir.1976) (rejecting "national" status of 20–year U.S. permanent resident convicted of heroin distribution, who had registered for Selective Service but never applied for U.S. citizenship); *Oliver v. United States Dep't of Justice, INS*, 517 F.2d 426, 427–28 (2d Cir.1975) (rejecting "national" status of 25–year per-

manent U.S. resident convicted of heroin possession who had not applied for naturalization).

Recently, however, at least two Courts of Appeals have held that an application for citizenship constitutes objective evidence of permanent allegiance in satisfaction of the definition of "national" in § 1101(a)(22). *See Hughes v. Ashcroft*, 255 F.3d 752, 757 (9th Cir.2001) (rejecting petitioner's claim of "national" status because he could not demonstrate minimal requirements of either birth in U.S. territory or application for U.S. citizenship); *United States v. Morin*, 80 F.3d 124, 126 (4th Cir.1996) (finding that native Mexican who had applied for U.S. citizenship was "national" under 8 U.S.C. § 1101(a)(22) for purposes of 18 U.S.C. § 2332).

I am not persuaded by the Government's argument that *Morin* is irrelevant to Shittu's petition because it was not a removal case. In *Morin*, the Court of Appeals for the Fourth Circuit held that a permanent resident who had applied for U.S. citizenship was a U.S. "national" for purposes of a federal statute that criminalized the murder of any "national of the United States." *Morin*, 80 F.3d at 126 (citing 18 U.S.C. § 2332). The Fourth Circuit found that the permanent resident's application for citizenship was the "most compelling evidence of permanent allegiance to the United States short of citizenship itself." *Id.* at 126. In enacting 18 U.S.C. § 2332(a) and incorporating the definition of "national of United States" contained in the INA, *see* 18 U.S.C. § 2331(2), Congress presumably intended that the identical language should mean the same thing in both statutes.

Neither the Supreme Court nor the Court of Appeals for the Third Circuit has decided this issue, although the Supreme Court in dicta has implicitly accepted the traditional view that "nationals" are non-

citizen residents of U.S. territories. *See Miller v. Albright*, 533 U.S. 420, 467 n. 2, 118 S.Ct. 1428, 140 L.Ed.2d 575 (1998) (noting in dicta that distinction between "citizen" and "national" "has little practical impact today," because "the only remaining noncitizen nationals are residents of American Samoa and Swains Island"). *Cf. Hampton v. Mow Sun Wong*, 426 U.S. 88, 90 n. 1, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976) (noting that Civil Service Commission *construes* "national" to cover only natives of American Samoa).

I conclude, as other courts before me have concluded, that long-term residency alone does not suffice to confer the status of "national." There must be some *objective demonstration of permanent allegiance.* An application for naturalization is one such objective demonstration. Indeed, an applicant for naturalization is required to sign an acknowledgment of his or her willingness and ability to take an oath of allegiance to the United States. Application for Naturalization, INS Form N–400 (Rev. 05/31/01), at 10. Registration for the Selective Service or service in USA Freedom Corps might be another such objective demonstration. *Cf. Carreon–Hernandez*, 543 F.2d at 637 (rejecting petitioner's claim of "national" status although he had registered for Selective Service). A long-time permanent resident living an exemplary life, who has confirmed his or her permanent allegiance to the United States and its ideals by applying for naturalization, might be considered a "national of the United States." This interpretation of § 1101(a)(22) runs parallel to Congress's specific provision for the naturalization of lawful permanent residents who have actively served in the U.S. Armed Forces. 8 U.S.C. § 1440(a).

The immigration courts should ordinarily consider all such objective indicia of permanent allegiance in determining whether a permanent resident who has applied for naturalization is a U.S. "national." Nevertheless, the existence of a single objective demonstration of permanent allegiance, such as an application for naturalization, is not conclusive if it is contradicted by other evidence showing the applicant's *lack* of such allegiance. In Shittu's case, while his application was still under consideration by the INS, he was convicted of an aggravated felony. Shittu's felony conviction objectively demonstrated his lack of allegiance to the United States and its laws and negated any possible inference of permanent allegiance from his naturalization application. Therefore, it was not necessary in Shittu's case for the Immigration Judge to consider other objective evidence of his allegiance. Shittu's aggravated felony conviction was sufficient by itself to refute any other evidence of his permanent allegiance to this country. The conviction demonstrated that his professed allegiance was no more than a convenient cover for illegal activity. To confer "national" status on one who disdains U.S. laws would be an affront to the many law-abiding immigrants to this country who apply for citizenship in good faith.

The Government has also pointed out that Shittu's application for naturalization would have been futile; one of the requirements for naturalization is "good moral character," 8 U.S.C. § 1427(a), and a person who has been convicted of an aggravated felony cannot be found to have "good moral character," 8 U.S.C. § 1101(f)(8). The Government argues that an aggravated felon such as Shittu should not be able to avoid deportation temporarily by claiming "national" status based on his pending naturalization application, since it is certain to be rejected eventually.

While the Government is correct that Shittu's application became futile after his felony conviction, the Government's futility

argument has far too limited an application to affect the proper interpretation of § 1101(a)(22). The narrow interpretation of "national" that the Government favors would affect many more immigrants than convicted felons. It may not be true that the naturalization applications of all permanent residents facing deportation would be futile. Moreover, the example of *Morin* shows that the interpretation of the term "national" affects the application of laws unrelated to immigration. In any case, since I have denied Shittu relief based on his inability to demonstrate permanent allegiance, I do not need to reach the Government's futility argument.

## III. CONCLUSION

In conclusion, whether I interpret § 1101(a)(22) to confine "national" status to non-citizen residents of U.S. territories, as the Government asks, or I find that it requires a case-by-case review of the objective indicia of the petitioner's permanent allegiance to the United States, following the Ninth and Fourth Circuits, I reach the same conclusion: Shittu is not and has never been a "national of the United States" under 8 U.S.C. § 1101(a)(22). Therefore I must deny his petition. An appropriate Order follows.

### ORDER

**AND NOW**, this day of May, 2002, upon consideration of the Petition for a Writ of Habeas Corpus, Petitioner's Motion for Injunctive Relief and Temporary Restraining Order/Stay of Deportation, and the Government's response thereto, and for the foregoing reasons, it is hereby **ORDERED** as follows:

1. Petitioner's Petition for a Writ of Habeas Corpus (document no. 1) is **DENIED.**

2. Petitioner's Motion for Injunctive Relief and Temporary Restraining Order/Stay of Deportation (document no. 3) is **DENIED** as moot.