**Yuen Shing LEE, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States of America, Immigration and Naturalization Services, Respondents.**

**No. 01 CV 0997(SJ).**

United States District Court, E.D. New York.

July 15, 2002.

Yuen Shing Lee, Brooklyn, New York, petitioner pro se.

Alan Vinegrad, Acting United States Attorney, Eastern District of New York, Brooklyn, New York, by Kathleen Anne Nandan, for respondents.

### MEMORANDUM AND ORDER

JOHNSON, District Judge.

Presently before the Court is Petitioner Yuen Shing Lee's ("Petitioner") *pro se* application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241 (" § 2241"), challenging his final order of removal. Petitioner contends that he cannot be deported as an alien because he is either eligible for derivative citizenship or is a "national" of the United States. This Court finds that Petitioner does not qualify for derivative citizenship under Section 320(a) of the Immigration and Nationality Act ("the INA"), 8 U.S.C. § 1431, as it existed at the time of his father's naturalization on January 24, 1978, or under the Child Citizenship Act of 2000, H.R. 2883, P.L. 106–395 ("the CCA"). However, the Court finds that Petitioner is a national of the United States, and thus cannot be deported under the INA. Accordingly, his § 2241 Petition is hereby GRANTED.

### FACTUAL BACKGROUND

Petitioner was born in Hong Kong on February 8, 1961 and entered the United States as a lawful permanent resident on February 7, 1973. (Nandan Decl., Ex. A.) He has resided in this country ever since. Petitioner's father became a naturalized United States citizen on January 24, 1978, when Petitioner was sixteen years old. (*Id.*, Ex. B.) His mother was naturalized on May 19, 1983. (*Id.*, Ex. C.) There is no indication that his parents were legally separated or divorced at the time his father became a citizen. Petitioner registered for Selective Service on September 9, 1980 (Pet.'s Addendum, dated Feb. 6, 2002, Ex. 1), and filed an application for citizenship on July 13, 1998 (Pet.'s Letter, dated March 28, 2001, Ex. 2).

On December 16, 1998, Petitioner was indicted on four counts of mail fraud, and ultimately pled guilty. On September 23, 1999, he was convicted of conspiracy to commit mail fraud and mail fraud, in violation of 18 U.S.C. §§ 371 and 1341, and was sentenced to 6 months incarceration.

On May 5, 2000, the Immigration and Naturalization Service ("the INS") issued to Petitioner a Notice to Appear and charged Petitioner with removability from the United States as an aggravated felon, pursuant to §§ 237(a)(2)(A)(III), 101(a)(43)(M)(i) and 101(a)(43)(U) of the INA. Petitioner contested his removability with the Office of Immigration Review, and filed a *pro se* motion seeking derivation of citizenship through the naturalization of his father. (Nanden Decl., Ex. G.) Immigration Judge Charles A. Wiegand, III denied the motion on December 22, 2000. (*Id.*, Ex. H.) Subsequently, Petitioner filed an interlocutory appeal with the Board of Immigration Appeals ("the BIA"), which the BIA declined to entertain. (*Id.*, Ex. J.) Petitioner has also filed an application for political asylum, claiming fear of persecution for violation of China's one-child policy. (*Id.*, Ex. A.) Petitioner was detained, pending his deportation, in the INS facility in Oakdale, Louisiana for two years. He was released from physical custody on May 31, 2002.

Petitioner filed the instant § 2241 petition on February 13, 2001, contending that he cannot be deported under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), because he is a citizen or a national of the United States.

### DISCUSSION

#### I. Jurisdiction

■ The United States Attorney argues that Petitioner's case should be dismissed

or transferred to the Western District of Louisiana, on the grounds that a district court must have jurisdiction over the custodian of a petitioner in order to entertain a habeas corpus action. *See Chukwurah v. United States*, 813 F.Supp. 161, 168 (E.D.N.Y.1993); *see also Yi v. Maugans*, 24 F.3d 500, 507 (3d Cir.1994). The Court must consider two factors in analyzing venue in habeas petitions brought under 28 U.S.C. § 2241: 1) whether the court has personal jurisdiction over the petitioner's custodians, and 2) whether the petitioner satisfies traditional venue considerations. *Mojica v. Reno*, 970 F.Supp. 130, 165 (E.D.N.Y.1997). The Government asserts that Petitioner Lee's custodian is the warden of the Federal Detention Center in Louisiana where he had been held while awaiting deportation. Petitioner contends that he is under the authority of the Attorney General of the United States, who is thus his actual custodian and the proper respondent in this case.

The question of whether the Attorney General is a proper custodian of an alien detained in an INS facility has divided the courts of the Southern and Eastern Districts of New York. *See Alcaide–Zelaya v. McElroy*, Nos. 99 Civ. 5102, 99 Civ. 9999, 2000 WL 1616981, at *4–*5 (S.D.N.Y. Oct.27, 2000) (citing and comparing cases, including *Arias–Agramonte v. Commissioner of INS*, No. 00 Civ. 2412, 2000 WL 1059678, at *7–*9 (S.D.N.Y. Aug. 1, 2000) (discussing split in authority and citing cases); *compare Arias–Agramonte v. Commissioner of INS*, No. 00 Civ. 2412, 2000 WL 1617999, at *5–*9 (S.D.N.Y. Oct. 30, 2000) (Attorney General is proper respondent and district court has personal jurisdiction over Attorney General); *Pena–Rosario v. Reno*, 83 F.Supp.2d 349, 362 (E.D.N.Y.2000) (Attorney General is proper respondent); *Mojica v. Reno*, 970 F.Supp. at 166 (same); *Nwankwo v. Reno*, 828 F.Supp. 171, 173–176 (E.D.N.Y.1993) (same); *with Guerrero–Musla v. Reno*, No. 97 Civ. 2779, 1998 WL 273038, at *1 (S.D.N.Y. May 28, 1998) (Attorney General is not proper respondent); *Carvajales–Cepeda v. Meissner*, 966 F.Supp. 207, 209 (S.D.N.Y.1997) (same); *Wang v. Reno*, 862 F.Supp. 801, 812–813 (E.D.N.Y.1994) (same)). The Second Circuit, while specifically declining to resolve this "difficult question," has also conducted a thorough analysis of the issue. *Henderson v. INS*, 157 F.3d 106, 122–28 (2d Cir.1998).

■ This Court finds that the reasons articulated supporting the Attorney General as an appropriate respondent are more persuasive. First, the Attorney General has the power to produce, detain, or release such petitioners and is the ultimate decision-maker on matters concerning the INS and Petitioner's removal. *See* 8 U.S.C. § 1103(a)(1) ("The attorney General shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens."); *see also Henderson*, 157 F.3d at 126 ("[T]he Attorney General has the power to produce the petitioners, remains the ultimate decision-maker as to matters concerning the INS, and is commonly designated a respondent in these cases, even when personal jurisdiction over the immediate custodian clearly lies."). Further, Congress has designated the Attorney General as the legal custodian of aliens. 8 U.S.C. § 1222(a) [1226(c)(1)] ("The Attorney General shall take into custody any alien who [is deportable or inadmissible for having committed a crime]."). Additionally, "there is a compelling practical concern that the government can 'seriously undermine the remedy of habeas corpus' by detaining so large a number of aliens in one facility that the local district court is overwhelmed by a flood of habeas petitions." *Alcaide–Zelaya*, 2000 WL 1616981, at *4.

Furthermore, in such cases, the location of custody, and the identity of the day-to-day custodian, frequently change when detainees are transferred among INS facilities, all of which are under the control of the Attorney General. *See Arias–Agramonte*, 2000 WL 1617999, at *8. This potential problem is made manifestly clear by the circumstances of the instant case. Here, Petitioner was released from custody on May 31, 2002. Therefore, he is no longer in the physical custody of the warden. Yet the Attorney General continues to maintain "custody" over Petitioner so long as the removal order remains pending. 8 U.S.C. § 1126(b) ("The Attorney General at any time may revoke a bond or parole ..., rearrest the alien ... and detain the alien.").

■ Petitioner's release from custody does not moot his petition. The federal habeas corpus statutes, including § 2241, require that a petitioner be in "custody" at the time of filing of the petition. *See* 28 U.S.C. § 2241(c)(3); *see also Canela v. United States Dep't of Justice*, No. 00 Civ. 8735, 2001 WL 664633 at *3 (S.D.N.Y. June 12, 2001). "Custody" in this context has been interpreted broadly, to include being "subject to restraints 'not shared by the public generally.'" *Hensley v. Mun. Ct.*, 411 U.S. 345, 351, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) (quoting *Jones v. Cunningham*, 371 U.S. 236, 240, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963)); *see also Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (discussing the extent to which collateral consequences of convictions may meet the "case or controversy" requirement). Although he has since been released from physical custody, Petitioner continues to suffer the consequences of the outstanding order of removal, including the imminent fear of deportation and permanent exclusion from the United States, which are sufficient to meet the "case or controversy" requirement of Article II, § 2, of the Constitution. *See Chong v. District Director, INS*, 264 F.3d 378, 385 (3d Cir.2001) (holding that sufficient collateral consequences flow from an order of removal to make a § 2241 petition a live case or controversy); *see also Chadha v. INS*, 634 F.2d 408, 417 (9th Cir.1980) (holding that the fear of deportation under the INA was sufficient injury to meet the "case or controversy" requirement); *Cardenas v. Superintendent*, No. 94 Civ. 5093, 1996 WL 497138, at *3, n. 1 (E.D.N.Y. Aug.26, 1996) (finding a deported habeas petitioner still "in custody" because he faced "collateral consequences" of his conviction). Accordingly, this Court exercises its jurisdiction over the petition.

## II. Venue

■ The Government argues that even if the Court finds that it has jurisdiction over the instant case, the habeas petition should nevertheless be transferred to the Western District of Louisiana because venue is not proper in the Eastern District of New York. Traditional venue considerations include 1) the location where the material events took place, 2) where records and witnesses pertinent to the claim are likely to be found, 3) the convenience of the forum for the respondent and petitioner, and 4) the familiarity of the court with the applicable laws. *See Henderson*, 157 F.3d at 128, n. 25; *Alcaide–Zelaya*, 2000 WL 1616981, at *5; *Arias–Agramonte*, 2000 WL 1059678, at *9; *Mojica*, 970 F.Supp. at 165.

■ In the instant case, these venue considerations favor a finding of proper venue in the Eastern District of New York. At all relevant times, Petitioner has resided within the Eastern District of New York. The underlying material events include Petitioner's conviction in the Southern District of New York, his incarceration at Fort Dix, New Jersey, and the Notice to Appear before an immigration judge in

Newark, New Jersey. Petitioner did not leave the region until the INS transferred him to its facility in Oakdale, Louisiana, over the objections of Petitioner and his counsel. The Petitioner would be severely disadvantaged by having to bring the habeas proceeding in Louisiana.[1] The witnesses and evidence to establish the merit of Petitioner's claim that he is a citizen or a national of the United States are located in New York, and Petitioner's family resides in New York. The Eastern District of New York is equally as convenient for Respondents as the Western District of Louisiana, and there is no indication that Respondents would be prejudiced by a transfer of venue to New York. Most compelling, Petitioner has now been released and has returned to his home within the Eastern District. Further, the immigration judge in Louisiana has already ruled against Petitioner, and the BIA has declined to review his case. Accordingly, there is no reason that venue should lodge in Louisiana. The Court finds that venue is proper in the Eastern District of New York.

### III. Derivative Citizenship

■ Petitioner initially requested relief from deportation on the grounds that he is a citizen, derived through the naturalization of his parents. Although he would not have been eligible for derivative citizenship under the immigration laws in existence at the time that his father naturalized, Petitioner contends that the Child Citizenship Act of 2000 should be applied retroactively to his case. This Court disagrees.

Prior to the 2000 amendment, INA § 321(a) provided that a child born outside of the United States of alien parents and residing in the United States as a lawful permanent resident becomes a citizen upon the naturalization of both parents, or where the parents are legally separated, by the naturalization of the parent having legal custody of the child. 8 U.S.C. § 1432(a) (1988). The child must be under age 18 at the time of such naturalization. 8 U.S.C. § 1432(a)(4) (1988). Petitioner's mother was not naturalized until 1983, at which time Petitioner was 23 years old, and the naturalization documents of both parents list their status as married and indicate that they resided at the same address. Accordingly, Petitioner would not have been eligible for derivative citizenship under this rule.

On October 30, 2000, Congress enacted the CCA, which amended the INA to confer derivative citizenship upon a child with one citizen parent. 8 U.S.C. § 1431(a) (2000). After the effective date of February 27, 2001, the new rule automatically confers citizenship on a child under the age of 18 upon the naturalization of one parent. However, the language of the CCA does not make it retroactive. The general presumption against retroactive legislation operates to preclude the CCA's application to Petitioner's circumstances. *See Hughes Aircraft v. U.S. ex rel Schumer,* 520 U.S. 939, 946, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) ("[W]e apply this time-honored presumption [against retroactive legislation] unless Congress has clearly

1. There is evidence to suggest that his previous transfer by INS negatively impacted his case before the BIA. Prior to his transfer, Petitioner had retained counsel in New York. Counsel had vociferously opposed Petitioner's transfer, indicating that transfer would cause an extreme hardship. (*See* Pet.'s March 28, 2001 Let., Ex. 7 (Letter from Vincent A. Schiano, Esq. to INS District Director Andrea J. Quarantillo, dated May 15, 2000) and Ex. 10 (Schiano Letter to Immigration Judge Charles A. Wiegand, III, dated Sept. 7, 2000).) After Petitioner's transfer, Counsel had appeared telephonically on Petitioner's behalf, but had failed to appear at several scheduled conferences and was removed by the Immigration Judge, leaving Petitioner to negotiate the BIA proceedings *pro se.* (Nandan Decl., Ex. F.)

manifested its intent to the contrary."). Although the Second Circuit has not yet considered the temporal reach of the CCA, those other courts which have ruled on this issue have unanimously agreed that the CCA cannot be applied retroactively. *See Cartagena–Paulino v. Reno,* 2001 WL 536934, at *3, n. 5 (S.D.N.Y. May 18, 2001); *United States v. Arbelo,* 288 F.3d 1262, 1263 (11th Cir.2002); *Nehme v. INS,* 252 F.3d 415, 431 (5th Cir.2001); *Hughes v. Ashcroft,* 255 F.3d 752, 760 (9th Cir.2001). Petitioner was 40 years old on February 27, 2001, thus the CCA cannot apply to him. Accordingly, his claim of derivative citizenship must fail.

### III. Status as a "National of the United States"

In the alternative, Petitioner asserts in an Addendum to his § 2241 Motion, filed on April 30, 2002, that he cannot be deported because he is not an alien, but a "national of the United States." *See* 8 U.S.C. § 1101(a)(3) ("The term 'alien' means any person not a citizen or national of the United States.") The INA defines a national as "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22). Petitioner argues that as a "national," not an "alien," he should not be subject to deportation under INA § 237(a)(2)(A)(iii), which mandates the deportation of "any alien who is convicted of an aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii).

The term "national" came into general use when the United States acquired territories outside its continental limits and accorded inhabitants with a status that was not equivalent to citizenship, but that nonetheless conferred certain rights and responsibilities as nationals of the United States. Such nationals were deemed to owe allegiance to the United States. *See* *Oliver v. United States Dep't of Justice,* 517 F.2d 426, 428, n. 3 (2d Cir.1975).

■ Various courts have considered the modern application of the term "national," without agreeing on the precise qualifications for according that status. Long-term residency and a personal claim or belief that one "owes allegiance" are clearly insufficient standing alone. *See Oliver,* 517 F.2d at 427 ("[T]he concept of 'owing allegiance' for purposes of nationality is not so easily satisfied or indeed understood"); *see also United States v. Sotelo,* 109 F.3d 1446, 1448 (9th Cir.1997) (Alien's subjective belief that he owed allegiance to the United States was insufficient to establish that he was a national.); *Sierra–Reyes v. INS,* 585 F.2d 762, 764 (5th Cir.1978) (Alien's claim to citizenship based on long residency in the United States and lack of allegiance to any other country were insufficient to confer status of national where individual had never filed a petition for naturalization.); *Shittu v. Elwood,* No. 02 Civ. 0682, 2002 WL 992036, at *3 (E.D.Pa. May 14, 2002) ("[L]ong-term residency alone does not suffice to confer the status of 'national.' There must be some objective demonstration of permanent allegiance."); *Carreon–Hernandez v. Levi,* 409 F.Supp. 1208, 1210 (D.Minn.) (finding petitioner deportable where he had lived and worked in the United States for over 20 years and was married to a U.S. citizen and the parent of a U.S. citizen child, but had never gone through the naturalization process), *aff'd* 543 F.2d 637 (8th Cir.1976). At a minimum, it appears that to qualify as a national, an individual must have demonstrated his or her allegiance by applying for citizenship. *Hughes v. Ashcroft,* 255 F.3d at 756; *see also Oliver,* 517 F.2d at 428 (finding that the petitioner did not qualify as a national because she continued to owe allegiance to Canada and had not chosen to renounce that allegiance by naturalizing); *United States v. Morin,* 80

F.3d 124, 126 (4th Cir.1996) ("[A]n application for citizenship is the most compelling evidence of permanent allegiance to the United States short of citizenship itself."). The Supreme Court has also identified the application for citizenship as a step in the process of acquiring the full rights of citizenship. *Johnson v. Eisentrager*, 339 U.S. 763, 770, 70 S.Ct. 936, 94 L.Ed. 1255 (1950) ("The alien, to whom the United States has been traditionally hospitable, has been accorded a generous and ascending scale of rights as he increases his identity with our society. Mere lawful presence in the country creates an implied assurance of safe conduct and gives him certain rights; they become more extensive and secure when he makes preliminary declaration of intention to become a citizen, and they expand to those of full citizenship upon naturalization.")

However, another district court has found that "the existence of a single objective demonstration of permanent allegiance, such as an application for naturalization, is not conclusive if it is contradicted by other evidence showing the applicant's *lack* of such allegiance." *Shittu*, 204 F.Supp.2d at 880–81. In *Shittu v. Elwood*, the Eastern District of Pennsylvania refused to extend the status of national to a permanent resident who had applied for naturalization, but was then convicted of intent to distribute heroin and sentenced to 37 months in prison. That court found that the petitioner's "aggravated felony conviction was sufficient by itself to refute any other evidence of permanent allegiance to this country. The conviction demonstrated that his professed allegiance was no more than a convenient cover for illegal activity." *Id.*

This Court declines to extend that court's reasoning to Petitioner Lee's case. Unlike Shittu, Lee has been a permanent resident for nearly 30 years. He entered the United States as a child, and has never lived anywhere else since. He is married to a United States citizen and has two citizen children. Both of his parents are naturalized citizens. All of his ties are to the United States. He has no ties to Hong Kong, a territory that is now under a different political authority than it was during the brief period of his residency there. Furthermore, Petitioner has objectively demonstrated his allegiance to the United States. Prior to his arrest and indictment in his only criminal case, Petitioner filed his application for citizenship on July 13, 1998, thereby expressing his willingness to take an oath of allegiance to his adopted country. In addition, his registration for Selective Service on September 9, 1980 further indicates his loyalty to the United States.

Petitioner was convicted of a crime that is defined as an aggravated felony for purposes of INA § 237(a)(2)(A)(iii). However, this was a crime of fraud, not narcotics distribution, nor an offense involving bodily harm or the use of a weapon. He was sentenced to only six months in prison. While the Court does not condone his fraudulent activity, it notes that Petitioner's single foray into criminal activity does not pose any ongoing danger to the community. He, along with three codefendants, have been ordered to pay restitution to the New York City Water Board in the amount of $115,558 in monthly installments dependant on Petitioner's employment income. He has already begun making these payments. The Court believes that Petitioner can thus contribute more positively to society by rejoining the community, resuming employment, and continuing to demonstrate his allegiance and fidelity to his adopted nation.

The Court finds that Petitioner has satisfied the requirements to be considered a national of the United States. He has demonstrated his allegiance through his

application for naturalization and his registration for Selective Service. As a national, he is not subject to deportation on the basis of his conviction for mail fraud. The INS is hereby enjoined from deporting Petitioner under INA § 237(a)(2)(A)(iii).

## CONCLUSION

For the foregoing reasons, Petitioner's application for a writ of habeas corpus seeking clarification of his status as a national of the United States is hereby GRANTED. Petitioner may not be deported as a criminal alien under INA § 237(a)(2)(A)(iii).

SO ORDERED.