**Jose Luis PERDOMO–PADILLA,**
**Petitioner,**

v.

**John ASHCROFT, Attorney**
**General, Respondent.**

**No. 01–71454.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 7, 2003.

Filed June 23, 2003.

Kathryn M. Davis and Ulrike I. Boehm, Latham & Watkins, Los Angeles, CA, for the petitioner; Jose Luis Perdomo–Padilla, petitioner pro se.

Mary Jane Candaux, Office of Immigration Division, U.S. Department of Justice, Washington, DC, for the respondent.

Before SCHROEDER, Chief Judge, and THOMPSON, and GRABER, Circuit Judges.

GRABER, Circuit Judge.

Petitioner Jose Luis Perdomo Padilla, a citizen of Mexico, was convicted of conspir-

acy to distribute marijuana. The Immigration and Naturalization Service ("INS") instituted removal proceedings against him pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), which provides for the removal of an alien who has been convicted of an aggravated felony. Arguing that he is a "national of the United States" within the meaning of 8 U.S.C. § 1101(a)(22) because he completed an application for naturalization containing a statement of allegiance to the United States, Petitioner appeals the Board of Immigration Appeals' ("BIA") decision ordering his removal. We hold that the filing of an application for naturalization does not change an applicant's immigration status from that of an alien to that of a national because, under the Immigration and Nationality Act ("INA"), a person may become a "national of the United States" only through birth or naturalization.[1] Accordingly, we deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner, a Mexican citizen, entered the United States through the Port of Entry in San Ysidro, California, and became a legal permanent resident of the United States in October 1982. Petitioner married another legal permanent resident and had four children, all of whom are citizens of the United States.

On July 26, 1997, Petitioner filed an application for naturalization. The application contained the following questions, to which Petitioner answered "yes":

1. Do you believe in the Constitution and form of government of the U.S.?

---

[1] A person also may become a national of the United States (or lose his or her status as a national) under terms outlined by Congress on those rare occasions when the United States acquires or relinquishes an outlying territory. *See Rabang v. Boyd,* 353 U.S. 427, 429–30, 77 S.Ct. 985, 1 L.Ed.2d 956 (1957)

(explaining the immigration-status history of inhabitants of the Philippine Islands, who became nationals when the islands were ceded to the United States by Spain, but who became aliens upon the proclamation of Philippine independence). That alternative route to nationality is not at issue here.

2. Are you willing to take the full Oath of Allegiance to the U.S.?

3. If the law requires it, are you willing to bear arms on behalf of the U.S.?

4. If the law requires it, are you willing to perform noncombatant services in the Armed Forces of the U.S.?

5. If the law requires it, are you willing to perform work of national importance under civilian direction?

In January 1999, Petitioner was arrested in California and charged with possession with intent to distribute marijuana. Petitioner pleaded guilty to one count of conspiracy to distribute marijuana.

In January 2001, the INS initiated removal proceedings against Petitioner. He appeared before an immigration judge ("IJ") hearing, and the IJ found that Petitioner was removable because he was an alien and had been convicted of an aggravated felony. The IJ also found that Petitioner was ineligible for relief from deportation.

Shortly after the IJ's decision issued, we decided *Hughes v. Ashcroft*, 255 F.3d 752 (9th Cir.2001). Petitioner argued before the BIA that, in light of *Hughes*, he was a national of the United States and thus not an alien subject to removal for commission of an aggravated felony. (He conceded that he stood convicted of an aggravated felony.) The BIA rejected Petitioner's argument and affirmed the IJ's decision. Petitioner now appeals the BIA's decision.

## STANDARD OF REVIEW

■ Under 8 U.S.C. § 1252(b)(5), we review Petitioner's claim that he is a national of the United States and determine whether there is a genuine issue of material fact. *Hughes*, 255 F.3d at 755. If we

conclude that there is not, we must decide Petitioner's claim; if we conclude that there is a genuine issue of material fact, we must transfer the case to the district court for a hearing. *Id.* at 755 & n. 1.[2] We review de novo the legal questions arising from Petitioner's claim that he is a national of the United States. *Id.* at 755.

## DISCUSSION

■ Petitioner argues that he is not an "alien" subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii), which provides for the removal of an alien who has been convicted of an aggravated felony. "Alien" is defined in 8 U.S.C. § 1101(a)(3) as "any person not a citizen or national of the United States." Title 8 U.S.C. § 1101(a)(22) defines "national of the United States" as "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." Petitioner argues that he is a "national of the United States" within the meaning of § 1101(a)(22)(B) because he completed an application for naturalization that contained a statement of allegiance to the United States. In light of the historical meaning of "national" and the text and context of § 1101(a)(22), we reject Petitioner's proposed interpretation of the statute. Instead, we hold that, under the INA, a person may become a national of the United States only through birth or naturalization.

A. *The BIA's Interpretation of the Statute*

■ In *In re Navas–Acosta*, 23 I. & N. Dec. 586, 586–87, 2003 WL 1986475 (2003), the BIA addressed whether an alien had

---

**2.** Neither party argues that there is a genuine issue of material fact in this case, and we do not discern one.

become a national of the United States by signing a statement of allegiance to the United States as part of his application for naturalization. The BIA held that the alien was *not* a national but remained an alien because "nationality under the [INA] may be acquired only through birth or naturalization." *Id.* at 588.

The government argues that the BIA's interpretation of the statute is entitled to *Chevron* deference. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (explaining circumstances meriting deference to an agency's interpretation of a statute). The government directs our attention to *INS v. Aguirre–Aguirre*, 526 U.S. 415, 424, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999), in which the Supreme Court held that the Ninth Circuit should have granted *Chevron* deference to the BIA's interpretation of a provision of the INA that the BIA is expressly charged with administering.

With respect to the particular statutory provision at issue here, however, the BIA's interpretation is not entitled to deference. In *Hughes*, we held that Congress did not grant discretion to the BIA to decide questions of law related to nationality. 255 F.3d at 757–58. We relied on 8 U.S.C. § 1252(b)(5)[3] for the proposition that "the INA explicitly places the determination of nationality claims solely in the hands of the courts of appeals and (if there are questions of fact to resolve) the district courts."

*Id.* at 758. Further, we noted that "[t]he review that we have conducted in past cases also illustrates that issues of law pertaining to nationality are for the court." *Id.* (discussing *Scales v. INS*, 232 F.3d 1159, 1162–63 (9th Cir.2000)). Accordingly, *Hughes* directly refutes the government's argument that *Chevron* deference must be granted to the BIA's interpretation of 8 U.S.C. § 1101(a)(22).

**B.  Traditional Meaning of "National of the United States".**

All citizens of the United States are also nationals. However, some nationals are not citizens. Traditionally, only persons born in territories of the United States were non-citizen nationals. *Cabebe v. Acheson*, 183 F.2d 795, 797 (9th Cir.1950). As Justice Ginsburg recently explained:

> Nationality and citizenship are not entirely synonymous; one can be a national of the United States and yet not a citizen. 8 U.S.C. § 1101(a)(22). The distinction has little practical impact today, however, for the only remaining noncitizen nationals are residents of American Samoa and Swains Island.

*Miller v. Albright*, 523 U.S. 420, 467 n. 2, 118 S.Ct. 1428, 140 L.Ed.2d 575 (1998) (Ginsburg, J., dissenting); *see also Hampton v. Mow Sun Wong*, 426 U.S. 88, 90 n. 1, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976) (noting that Civil Service Commission regulations construed "nationals" "who owe

---

**3.** Title 8 U.S.C. § 1252(b)(5) provides:

(A) Court determination if no issue of fact
If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim.
(B) Transfer if issue of fact
If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact

about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28.
(C) Limitation on determination
The petitioner may have such nationality claim decided only as provided in this paragraph.

permanent allegiance to the United States" to cover only natives of American Samoa (citing 5 C.F.R. § 338.101 (1976))).

This court, too, has explained that non-citizen nationality has traditionally been limited to people who were born in territories of the United States: "The term 'national' came into popular use in this country when the United States acquired territories outside its continental limits, and was used in reference to noncitizen inhabitants of those territories." *Rabang v. INS,* 35 F.3d 1449, 1452 n. 5 (9th Cir. 1994); *see also United States v. Sotelo,* 109 F.3d 1446, 1448 (9th Cir.1997) (quoting *Rabang* for the same principle).

Further, we have suggested that nationality may be acquired only through birth or completion of the entire naturalization process and have made no provision for a third route to nationality, such as through completion of an application for naturalization: "United States nationality depends primarily upon the place of birth, the common law principle of jus soli having been embodied in the Fourteenth Amendment of the Constitution of the United States. Nationality may also be acquired by naturalization and lost by expatriation." *Cabebe,* 183 F.2d at 797. Similarly, we have noted that, "[a]lthough we have not definitively defined the term national, we have suggested a person attains national status primarily through birth." *Sotelo,* 109 F.3d at 1448.

Other courts of appeals have also characterized non-citizen nationals as those born in territories of the United States. The Second Circuit has explained:

> The term nationals came into use in this country when the United States acquired territories outside its continental limits whose inhabitants were not at first given full political equality with citizens. Yet they were deemed to owe permanent allegiance to the United States and were entitled to our country's protection. The term national was used to include these noncitizens in the larger group of persons who belonged to the national community and were not regarded as aliens.

*Oliver v. INS,* 517 F.2d 426, 428 n. 3 (2d Cir.1975) (per curiam); *see also Igartua De La Rosa v. United States,* 229 F.3d 80, 86 n. 12 (1st Cir.2000) (per curiam) (Torruella, J., concurring) (noting that only residents of American Samoa and Swains Island are nationals of the United States within the meaning of 8 U.S.C. § 1101(a)(22)).

Thus, decisions of the Supreme Court, this court, and other courts of appeals all suggest that the term "national," when used to describe non-citizens, refers only to those born in territories of the United States.

### C. Text and Context of § 1101(a)(22)

Both the text and context of 8 U.S.C. § 1101(a)(22) support our interpretation of "national of the United States." As discussed below, a number of statutory provisions are difficult, if not impossible, to reconcile with Petitioner's claim that he is not an alien.

#### 1. Statutory Text

Section 1101(a)(22)(B) defines "national of the United States" as "a person who, though not a citizen of the United States, owes *permanent* allegiance to the United States." (Emphasis added.) A naturalization applicant cannot rightly be said to owe *permanent* allegiance, because naturalization applications are often denied or withdrawn.[4] It is difficult to see how a citizen

---

4. The naturalization application signed by Pe-    titioner does not require the applicant pres-

of another country, whose application for naturalization may be denied or withdrawn, nonetheless owes *permanent* allegiance to the United States. *See* 8 U.S.C. § 1101(a)(31) (defining "permanent" to mean "a relationship of continuing or lasting nature, as distinguished from temporary").

Moreover, Petitioner's interpretation creates an absurd result with respect to those persons whose applications for naturalization are, in fact, denied. An applicant for naturalization may renounce his or her statement of allegiance to the United States by withdrawing the application. *United States v. United States Dist. Court ex rel. Chavez–Orozco,* 316 F.3d 1071, 1073 (9th Cir.2003). However, the INS's rejection of a naturalization application does not necessarily invalidate the applicant's statement of allegiance to the United States. Under Petitioner's reading of the statute, therefore, rejected naturalization applicants who do not renounce their statements of allegiance could remain nationals of the United States.[5] Those rejected applicants would not be aliens and, accordingly, would not be removable under 8 U.S.C. § 1227 (providing only for the removal of "aliens"). Congress clearly did not intend this odd construction of the statute.

### 2. *Statutory Context*

As we have just explained, the text of § 1101(a)(22) supports our holding. The statutory context of that provision further bolsters our interpretation of "national of the United States."

Title 8 U.S.C. § 1101(a)(23) provides that "[t]he term 'naturalization' means the conferring of *nationality* of a state upon a person *after birth, by any means whatsoever.*" (Emphasis added.) Thus, the statutory provision immediately following the definition of "national of the United States" provides that "naturalization" is the path by which a person attains nationality after birth. Section 1101(a)(23) makes no provision for the attainment of nationality short of full naturalization and, therefore, is consistent with our conclusion that one may become a "national of the United States" only through birth or by completing the process of becoming a naturalized citizen.

We find further support for our interpretation of "national of the United States" in 8 U.S.C. § 1408, which lists four categories of persons who are classified as nationals, but not citizens, of the United States. All the categories enumerated in § 1408 relate in some way to birth in an outlying possession of the United States,[6] or birth to parents who are nationals of the United States. *Id.* Under traditional prin-

---

ently to pledge permanent allegiance to the United States. Instead, the application asks only: *"Are you willing* to take the full Oath of Allegiance to the U.S.?"* (Emphasis added.) The statement of allegiance signed by an applicant is prospective in nature and, therefore, an applicant does not owe permanent allegiance to the United States until the applicant takes the full oath of allegiance as part of a naturalization ceremony. The applicant may withdraw the application before that occurs. *See* 8 C.F.R. § 335.10 (allowing an applicant to request withdrawal of his or her naturalization application without prejudice to any future application).

**5.** In fact, this very argument has been made. *See Rodriguez v. Ashcroft,* No. 02Civ.1188, 2003 WL 42018, at *3 (S.D.N.Y. Jan. 6, 2003) (dismissing for lack of jurisdiction a petitioner's claim that, although his application for naturalization had been denied, he was nonetheless a national of the United States because the application had contained a statement of allegiance to the United States).

**6.** Title 8 U.S.C. § 1101(a)(29) provides that "[t]he term 'outlying possessions of the United States' means American Samoa and Swains Island."

ciples of statutory interpretation, the fact that Congress has defined "national" as including only those categories of persons is significant. *See Boudette v. Barnette,* 923 F.2d 754, 756–57 (9th Cir.1991) (noting that the canon of *"expressio unius est exclusio alterius* ... as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions" (citation omitted)).

Petitioner's interpretation of § 1101(a)(22) is also called into doubt by 8 U.S.C. § 1481. That provision sets forth a number of ways in which a "person who is a national of the United States *whether by birth or naturalization,* shall lose his nationality." 8 U.S.C. § 1481(a) (emphasis added). By mentioning only birth and naturalization as reasons why a person would be a national of the United States, § 1481(a) implies that those are the *only* ways in which a person can attain the status of a national.

Perhaps most importantly, Petitioner's interpretation of § 1101(a)(22) cannot be reconciled with 8 U.S.C. § 1429, which provides that "no person shall be naturalized against whom there is outstanding a final finding of deportability ... and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding." 8 U.S.C. § 1429. The natural reading of this statute is that removal proceedings and final removal orders are to take precedence over naturalization applications. Because the INA permits the removal of aliens only, and § 1429 allows the removal of individuals with pending naturalization applications, it is clear that

Congress viewed applicants for naturalization as aliens and not as nationals.

When Petitioner's reading of § 1101(a)(22) is viewed in light of § 1429, it is clear that Petitioner's interpretation would paralyze the INS in cases in which a person files a naturalization application after the INS has instituted removal proceedings.[7] The INA allows the removal of "aliens" only. However, Petitioner argues that a naturalization applicant's statement of allegiance alters his immigration status from that of an alien to that of a national of the United States. Therefore, under Petitioner's interpretation of § 1101(a)(22), if a person were to file a naturalization application after the INS had begun removal proceedings against him, the person would thereby become a "national" and the INS would not be permitted to complete the removal proceedings. However, the INS *also* could not act on that person's naturalization application because it would be prohibited from doing so by § 1429. The result would be a catch–22 for the INS, in which the naturalization applicant could be neither removed nor naturalized so long as there was a removal proceeding pending against the applicant. We do not believe that paralysis was Congress' intended result.

### 3. *Regulatory Context*

The INS has not issued regulations defining "national" under § 1101(a)(22). However, at least one regulation addresses the meaning of "national of the United States" in a different context, and it supports our interpretation of the statute. Title 14 C.F.R. § 1259.101(c) defines "national of the United States" for purposes of a NASA grant program as "a citizen of the United States or a native resident of a

---

7. Petitioner argues that § 1429 bars the filing of new applications for naturalization after removal proceedings have been initiated.

However, that is not what the text of the statute says.

possession of the United States. It does not refer to or include a citizen of another country who has applied for United States citizenship."

In summary, the text and context of § 1101(a)(22) support our interpretation of "national of the United States."

### D. *Case Law Defining "National of the United States"*

Despite the text and context of § 1101(a)(22), and despite the traditional interpretation of "national of the United States," Petitioner argues that cases decided by this court and others require us to adopt his interpretation of the statute. We disagree.

#### 1. *Hughes* and Other Ninth Circuit Decisions

Petitioner argues, first, that our decision in *Hughes* supports his interpretation of § 1101(a)(22). However, he reads *Hughes* too broadly. In that case, we noted only that

> it appears that, in order for a person who is born outside the United States to qualify for "national" status, the person must, *at a minimum,* demonstrate (1) birth in a United States territory or (2) an application for United States citizenship. Because Petitioner does not meet either of those *minimal requirements, we need not delineate what additional facts (if any) he would have to show.*

255 F.3d at 757 (emphasis added). That is, we expressly declined to decide whether an application for naturalization, standing alone, is sufficient to confer nationality on an alien. Instead, we left that issue open.

No other decision of this court has answered the question at issue here. Nonetheless, one of our post-*Hughes* decisions contains dictum on which the government relies. In *Chavez–Orozco,* 316 F.3d at 1072, a defendant who was charged with illegal entry after deportation argued, as a defense, that he was a national of the United States. The defendant argued that he had completed an application for naturalization and, in doing so, had signed an oath of allegiance to the United States. But the defendant later had asked to withdraw his application, and the INS had granted his request. *Id.* Relying on the withdrawal of the defendant's application, we rejected his argument that he was a national of the United States. *Id.* at 1073.

In doing so, we expressed skepticism toward the idea that a completed application for naturalization alone could be sufficient to make the applicant a national of the United States:

> Chavez's entire defense—that he is a "national" of the United States—depends upon an oath of allegiance which was part of the application for seeking citizenship which he withdrew. We doubt that one could become a national by merely taking such an oath, but we need not decide that issue.

*Id.* However, *Chavez–Orozco* has no precedential value here because we expressly refused to decide the question now before us.

#### 2. *Decisions of Other Courts*

A number of other courts have weighed in on the meaning of the term "national." The case on which Petitioner relies most heavily is *United States v. Morin,* 80 F.3d 124 (4th Cir.1996). In that case, the defendant argued that he had not violated a federal criminal statute prohibiting the murder of " 'a national of the United States, while such national is outside the United States.' " *Id.* at 126 (quoting 18 U.S.C. § 2332(a)). The defendant had solicited the murder of a Mexican citizen who was a lawful permanent resident of the United States. *Id.* The murder was to be

carried out while the permanent resident was in the Philippines. The defendant's sole defense was that the permanent resident was not a "national of the United States." *Id.* The government countered by arguing that the permanent resident had completed an application for naturalization and, therefore, was a national because he " 'owe[d] permanent allegiance to the United States.' " *Id.* (quoting 8 U.S.C. § 1101(a)(22)). The Fourth Circuit adopted the government's definition of "national," noting that "an application for citizenship is the most compelling evidence of permanent allegiance to the United States short of citizenship itself." *Id.*

*Morin* is directly on point because, although the question of how to define the term "national" arose in a criminal case instead of in a removal proceeding, the Fourth Circuit defined the term for purposes of 8 U.S.C. § 1101(a)(22), the same statute at issue here. Accordingly, *Morin* supports Petitioner's reading of the statute.

Nonetheless, *Morin* does not persuade us. The Fourth Circuit provided no reasoning for its conclusion except for the statement quoted above. The court did not discuss the traditional meaning of "national," the text of § 1101(a)(22), or the apparent inconsistency of other statutory provisions with the court's interpretation of "national of the United States."

Petitioner also relies on two district court cases that, he asserts, support his position. *See Lee v. Ashcroft,* 216 F.Supp.2d 51 (E.D.N.Y.2002); *Shittu v. Elwood,* 204 F.Supp.2d 876 (E.D.Pa.2002). Neither of those cases persuades us. Like Petitioner here, Shittu committed an aggravated felony. The *Shittu* court held that the petitioner's "felony conviction objectively demonstrated his lack of allegiance to the United States and its laws and negated any possible inference of per-

manent allegiance from his naturalization application." *Id.* at 880. In other words, the holding of *Shittu* does not help Petitioner. In *Lee,* the district court's decision would help him. However, the court focused primarily on the common-sense meaning of "allegiance to the United States," without analyzing other clues as to the meaning of "national of the United States."

### CONCLUSION

In light of the historical meaning of "national" and the text and context of 8 U.S.C. § 1101(a)(22), we hold that a person can become a "national of the United States" under the INA only through birth or naturalization. Accordingly, Petitioner did not change his status from that of an alien to that of a United States national by filing an application for naturalization.

**PETITION DENIED.**