United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 18, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 03-60451
_____

SHAREEF AHMAD ALWAN,

Petitioner,

versus

JOHN ASHCROFT, U. S.
ATTORNEY GENERAL

Respondent.

_____

Petition for Review from the Board of Immigration Appeals,
Executive Office of Immigration Review
_____

Before GARWOOD, JOLLY and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Shareef Alwan is a national of the Occupied Palestinian Territories who, until his deportation in 2003, resided in the United States. He was convicted of contempt of court in violation of 18 U.S.C. § 401(3) for failure to testify as ordered before a federal grand jury. As a result, in April 2002, the Immigration and Naturalization Service ("INS") charged Alwan as deportable under the Immigration and Nationality Act ("INA"), which permits deportation of any alien convicted of an "aggravated felony". 8 U.S.C. § 1227(a)(2)(A)(iii). An Immigration Judge held that Alwan's conviction of criminal contempt does constitute an "aggravated felony" and ordered him deported. Alwan appealed to

the Board of Immigration Appeals ("BIA"), which affirmed the Immigration Judge's decision without opinion. Alwan now petitions this court, pursuant to its authority under 8 U.S.C. § 1252, to review the BIA's final order of removal. He contends, <u>inter</u> <u>alia</u>, that he is not an alien and that the crime of contempt of court is not an "aggravated felony". We do not agree and thus conclude that § 1252 expressly denies the appellate court jurisdiction to review the order. The petition for review is, therefore, DISMISSED.

I

Shareef Alwan was born in Jordan and is currently a national of the West Bank, one of the areas commonly known as the Occupied Palestinian Territories. His parents became United States citizens in 1980, while Alwan still resided in the West Bank. In 1989, at the age of 20, Alwan entered the United States as a legal permanent resident. Alwan claims that, since his entry, he has taken steps to affirm his allegiance to the United States, including registering with the Selective Service, taking an oath of allegiance, and applying for derivative citizenship on his parents' applications for naturalization.

In 1995, while in Israel seeking to meet and wed a Palestinian woman, Alwan was arrested by Israeli authorities. Alwan claims that, while in Israeli custody, he was tortured until he signed a confession admitting that he had been recruited in Chicago in 1990 by the terrorist organization HAMAS and subsequently trained in the

use of firearms and explosives. After confessing, Alwan was charged with a lesser offense, pled guilty, and served approximately eighteen months before being released in June 1997. Before returning to the United States, Alwan met and married a Palestinian woman. She became pregnant soon after, and Alwan decided to remain in the West Bank until the child was born. In March 1998, Alwan returned to the United States alone.

Upon his return, Alwan was subpoenaed to testify before a special grand jury investigating criminal activities of HAMAS in the Chicago area. Though he answered background questions, he exercised his Fifth Amendment privilege and refused to answer questions about allegations of money laundering between the Middle East and the United States. In January 1999, Alwan returned to the West Bank to visit his family. He acknowledges that, during this visit, he "was not arrested or harmed by the Israeli military".

In July 1999, after his return to the United States, Alwan was again subpoenaed and appeared before a second special grand jury, also investigating HAMAS activities in Chicago. The district judge granted Alwan immunity from prosecution and informed him that he would be charged with contempt of court if he did not testify. Alwan nonetheless refused to do so, claiming that the immunity he had been granted would not protect him from retaliation during future visits to his family in Israel. As a result, Alwan was convicted of criminal contempt in violation of 18 U.S.C. § 401(3). This conviction, in turn, led the INS to begin deportation

proceedings under 8 U.S.C. § 1227(a)(2)(A)(iii), which permits deportation of any alien convicted of an aggravated felony. In August 2003, after an unsuccessful appeal to the BIA, Alwan was deported to the West Bank.

II

We review factual findings by the BIA to determine whether they are supported by substantial evidence. Ontunez-Tursios v. Ashcroft, 303 F.3d 341, 350 (5th Cir. 2002). A slightly more complex question is what standard we are to apply in reviewing legal conclusions of the BIA.

The BIA's determinations as to purely legal questions are reviewed de novo. Omagah v. Ashcroft, 288 F.3d 254, 258 (5th Cir. 2002). As to questions of statutory interpretation, however, we owe substantial deference to an agency's construction of a statute that it administers. Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842 (1984). An exception to the general rule of Chevron arises, however, where Congress, by the terms of the statute itself, instructs the courts to apply a less deferential standard of review as to a particular issue of statutory interpretation. In this case, Alwan challenges two discrete aspects of the BIA's interpretation of the INA: one to which this exception applies, and one to which we owe Chevron deference.

4

Alwan challenges the BIA's characterization of him as an "alien", claiming that he is instead a "national" of the United States. If he is a national, he is not deportable. In the context of an order of removal, the INA explicitly places the determination of nationality claims in the hands of the courts. See Hughes v. Ashcroft, 255 F.3d 752, 758 (9th Cir. 2001). The INA provides, in pertinent part, that where "the petitioner claims to be a national of the United States and the court of appeals finds ... that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim."[1] 8 U.S.C. § 1252(b)(5)(A). The statute further provides that "the petitioner may have such nationality claim decided only as provided in this paragraph." 8 U.S.C. § 1252(b)(5)(C). Thus, based on the plain language of the INA, we conclude that Alwan's nationality claim is a purely legal question that Congress has not consigned to the discretion of the BIA. As such, we review it de novo.

Secondly, Alwan contends that, even if he is an alien, his crime of contempt of court does not constitute an "aggravated felony" within the meaning of § 1227(a)(2)(A)(iii). Unlike the question of national status, interpretation of the term "aggravated

---

[1] Where the petitioner claims to be a U.S. national and the court of appeals finds that a material issue of fact as to nationality is presented, the question is still one for the courts. Nationality cases wherein material issues of fact remain are to be transferred "to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim ...". 8 U.S.C. § 1252(b)(5)(B).

felony" has not been designated by Congress as a matter to be ultimately resolved by the courts. Thus, we are obliged to accord the BIA Chevron deference as it gives the term "concrete meaning through a process of case-by-case adjudication." I.N.S. v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999) (quoting I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 448-49 (1987)). Accordingly, we review the BIA's conclusion that Alwan's crime is an "aggravated felony" only to determine whether it represents a "permissible construction" of the language of the INA. Aguirre-Aguirre, 526 U.S. at 424.

A

As a preliminary matter, the Government contends that this case is not properly before us because Alwan's deportation in August 2003 has rendered the matter moot. We do not agree.

Under Article III, § 2, of the Constitution, federal courts may adjudicate only "actual, ongoing cases or controversies". Deakins v. Mohaghan, 484 U.S. 193, 199 (1988). The case or controversy requirement "subsists through all stages of federal judicial proceedings" and requires that the parties "continue to have a personal stake in the outcome of the lawsuit". Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quoting Lewis v. Continental Bank Corp., 494, U.S. 472, 477-78 (1990)). In instances where a litigant's primary stake in the outcome becomes moot -- typically in habeas cases where the petitioner is released while the case is still pending -- federal courts will allow the suit to proceed only

6

where some "collateral consequence" of the litigation's outcome persists. See, e.g., Spencer, 523 U.S. at 8.

It is true that Alwan lost his primary personal stake in this litigation when he was deported in August 2003. An important collateral consequence of our decision in this case, however, is whether Alwan will be permanently inadmissible to the United States under 8 U.S.C. § 1182(a)(9)(A)(i)-(ii), which bars re-entry of aliens removed for conviction of an aggravated felony.

The Government insists that this collateral consequence of our decision is not sufficient to prevent a finding of mootness. This argument runs contrary to our decision in Umanzor v. Lambert, where we held that a five-year period of inadmissibility following deportation represented a stake in the outcome of the case sufficient to avoid mootness under Article III. 782 F.2d 1299, 1301 (5th Cir. 1986). The Government attempts to evade the implications of Umanzor by arguing that the Supreme Court, in Spencer, "eliminated any presumption" of collateral consequences, requiring instead that the litigant show "concrete disadvantages or disabilities" in order to satisfy the case or controversy requirement. See 523 U.S. at 13-14.

Even if the Government's reading of the holding in Spencer were correct,[2] this argument misses the point. In Umanzor, we

_____

[2] Arguably, the holding in Spencer should be read more narrowly. The precise holding in Spencer only "refused to extend [the] presumption of collateral consequences ... to the area of parole revocation." 523 U.S. at 12-14.

7

applied the then-unqualified holding of the Supreme Court that the "mere possibility of adverse collateral consequences is sufficient to preclude a finding of mootness." 782 F.2d 1301 (quoting Sibron v. New York, 392 U.S. 40, 55 (1968)). In the present case, however, no such assumption of consequences is necessary to overcome an argument of mootness. Affirmation of the BIA's decision would render Alwan permanently ineligible to re-enter the country. Permanent inadmissibility to the United States is a "concrete disadvantage"; it is imposed as a matter of law and is not contingent upon any future event. See Max-George v. Ashcroft, 205 F.3d 194, 196 (5th Cir. 2000), vacated on other grounds, Max-George v. Ashcroft, 533 U.S. 945 (2001); Perez v. Greiner, 296 F.3d 123, 126 (2d Cir. 2002); Tapia Garcia v. INS, 237 F.3d 1216, 1218 (10th Cir. 2001); Steele v. Blackman, 236 F.3d 130, 134 (3d Cir. 2001). As such, Alwan's claim is not moot and, accordingly, the case or controversy requirement of Article III is met.[3]

---

[3] The Government further contends that, even if the prospect of permanent inadmissibility is sufficiently serious to satisfy the case or controversy requirement, Alwan's petition is nonetheless moot because he is permanently inadmissible for a reason independent of this court's review of his removal. Alwan's petition, and our review, center on whether criminal contempt is an "aggravated felony" for which an alien may be deported and barred from re-entry. See 8 U.S.C. § 1127(a)(2)(A)(iii). The Government argues that, regardless of how we decide that question, Alwan's offense was also a "crime involving moral turpitude", for which he may be deported and barred from re-entry under a separate provision. See 8 U.S.C. § 1127(a)(2)(A)(i).

There is no reference to the "moral turpitude" provision in the Immigration Judge's decision. This is not surprising, however, since it does not apply in this case. The provision in question

8

Because Alwan's claim is not moot, there remains a second threshold question: whether this court has jurisdiction to review the order of removal against Alwan.[4] Federal courts are, of course, courts of limited jurisdiction. As a general proposition then, we have no power of review unless it is conferred by statute. See, e.g., Peoples National Bank v. Office of Comptroller of Currency of the United States, 362 F.3d 333, 336 (5th Cir. 2004).

In this case, Congress has expressly barred judicial review of "any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section ... 1227(a)(2)(A)(iii)" -- i.e., an "aggravated felony". 8 U.S.C. § 1252(a)(2)(C). Thus, the question of our appellate jurisdiction in this case hinges upon two questions that mirror precisely the substantive issues raised in Alwan's petition for review. They are: (1) whether Alwan is properly characterized as an "alien"; and (2) if Alwan is an alien, whether his criminal offense was an

---

allows deportation of "[a]ny alien who ... is convicted of a crime involving moral turpitude committed within ... ten years in the case of an alien provided lawful permanent resident status ... after the date of admission ...". Id. Alwan was admitted as a permanent resident in 1989 and was convicted nearly twelve years later in 2001. As such, there appears to be only one statutory basis for Alwan's deportation -- the "aggravated felony" provision of § 1127(a)(2)(A)(iii) -- and it is squarely before this court.

[4]Because the BIA affirmed without opinion the Immigration Judge's decision, the Immigration Judge's opinion is treated as the BIA's final determination for purposes of judicial review. See 8 C.F.R. § 1003.1(a)(7)(iii).

"aggravated felony" within the meaning of § 1227(a)(2)(A)(iii), thus rendering him removable from the United States.[5] As such, our jurisdictional inquiry effectively merges with our review of the merits of the case.

C

We thus examine the core contention of Alwan's petition and ask whether the Immigration Judge erred in concluding that Alwan's criminal contempt conviction rendered him deportable from the United States under § 1227(a)(2)(A)(iii).

(1)

Only aliens are deportable under the Immigration and Nationality Act. See 8 U.S.C. § 1227. The INA defines "alien" as "any person not a citizen or national of the United States". 8 U.S.C. § 1101(a)(3). Alwan contends that he is not an alien, but a national, which the INA defines as "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States". 8 U.S.C. § 1101(a)(22).

The INA is silent as to what constitutes a "a person who ... owes permanent allegiance to the United States". As noted supra, however, the BIA's determination that Alwan fails to meet this criterion is not subject to Chevron deference. See 8 U.S.C. §

---

[5] We retain jurisdiction to determine by de novo review whether the requisite facts have been established so as to trigger the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(C). See Lopez-Elias v. Reno, 209 F.3d 788, 791 (5th Cir. 2000).

10

1252(b)(5)(A).  As such, we review it de novo, and conclude that the BIA did not err in rejecting Alwan's claim of national status.

The Government appears to advance the position, adopted by the Ninth Circuit, that the term "national" refers only to United States citizens and inhabitants of U.S. territories "not ... given full political equality with citizens", a designation now only applicable to residents of American Samoa and Swains Island.  See Perdomo-Padilla v. Ashcroft, 333 F.3d 964 (9th Cir. 2003). By contrast, Alwan argues in his brief that a person may demonstrate "permanent allegiance to the United States", and thus attain national status, by applying for citizenship and "compl[e]menting said application with objective demonstrations of allegiance."  See Lee v. Ashcroft, 216 F. Supp. 2d 51 (E.D.N.Y. 2002).

Because Alwan's claim of national status fails under either standard, we decline to decide here which definition of "national" is correct.  We therefore assume, arguendo, that an alien may attain national status through sufficient objective demonstrations of allegiance to the United States.  Alwan claims that he has objectively demonstrated his allegiance by (1) applying for derivative citizenship on his parents' applications for naturalization; (2) registering with the Selective Service; and (3) taking an oath of allegiance during a 1995 interview with an INS officer.

11

Alwan's petition for naturalization was denied. His claims of having registered with the Selective Service and of having taken an oath of allegiance are not supported by any citations to evidence in the record. Nonetheless, we will further assume, arguendo, that the latter two events did occur, and find that the "objective demonstrations of allegiance" proffered by Alwan are insufficient to confer national status.

Alwan's claim of nationality hangs on a single premise: that his situation is similar to that of the petitioner in Lee v. Ashcroft, a case from the Eastern District of New York. Id. In Lee, a citizen of Hong Kong successfully challenged a final order of removal on the grounds that he was a national of the United States. The petitioner in Lee, however, demonstrated far more permanent ties to the United States than Alwan. He had lived in the United States since early childhood, had married a United States citizen, and had two citizen children. More importantly, he maintained no ties with his native Hong Kong, which, in any event, was under different political authority than during his brief residency there. Id. at 58. This absence of ties is in stark contrast to Alwan, who made regular extended visits to the West Bank, initially for the purpose of meeting and marrying a Palestinian woman, and later to visit his wife and child.

In sum, though Lee perhaps presents a permissive interpretation of the requirements of national status, even it would not include Alwan under its aegis. We therefore hold that

12

Alwan has not demonstrated the "permanent allegiance to the United States" required to attain national status under 8 U.S.C. § 1101(a)(22). As such, the BIA did not err in classifying him as an alien, deportable under the provisions of the INA.

(2)

We now come to the final determinant of this case: Alwan contends that his crime, contempt of court, does not constitute an "aggravated felony" within the meaning of § 1227(a)(2)(A)(iii), and thus, is not an offense for which an alien may be deported. We disagree. We review the BIA's conclusion that Alwan's crime is an "aggravated felony" to determine whether it represents a "permissible construction" of the language of the INA. See Aguirre-Aguirre, 526 U.S. at 424.

The INA defines the term "aggravated felony" as including offenses "relating to obstruction of justice ... for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(S). We have yet to decide whether a conviction of criminal contempt under 18 U.S.C. § 401(3), which punishes "disobedience of a court order", meets these criteria. The matter is complicated somewhat by the fact that the INA does not define "obstruction of justice". Title 18 of the United States Code, however, provides a listing of crimes that are collectively labeled, "obstruction of justice". See 18 U.S.C. §§ 1501-1518. In cases where, as here, the defendant is convicted of a crime not expressly designated as obstruction, the BIA looks to §§ 1501-1518 to determine whether the substantive

13

offense would be punishable under any of the provisions therein. See In re Espinoza-Gonzalez, 22 I.& N. Dec. 889 (BIA 1999).

The provision cited by the BIA in this case is § 1503, which provides that "[w]hoever corruptly ... endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States ... in the discharge of his duty" is guilty of obstruction of justice.  18 U.S.C. § 1503(a).  The Supreme Court has observed that this portion of § 1503(a) "serves as a catchall", prohibiting any endeavor to impede the administration of justice that is not prohibited by other, more specific provisions. U.S. v. Aguilar, 515 U.S. 593 (1995).  As such, the Court applied a "nexus" requirement in its construction of § 1503, holding that the  endeavor "must have a relation in time, causation, or logic with the judicial proceedings" and must have the "'natural and probable effect' of interfering with the due administration of justice." Id. (quoting United States v. Wood, 6 F.3d 692, 696 (10th Cir. 1993)).  Alwan cites our holding in Knight v. U.S. for the proposition that "there must exist a specific intent in order to violate § 1503" and that "the specific intent must be to do some act or acts which tend to ... influence, obstruct, or impede the due administration of justice".  310 F.2d 305, 307 (5th Cir. 1962).

We have no trouble concluding that Alwan possessed the requisite specific intent, such that his violation of 18 U.S.C. § 401(3) also constitutes obstruction of justice under § 1503.  This

14

case is not like Aquilar, for example, where the defendant was questioned outside of court, such that there might be some ambiguity in his mind as to whether a misstatement or refusal to testify would influence a judicial proceeding. See 515 U.S. at 600. Instead, Alwan was advised by the district court that he had been granted immunity from prosecution, informed that the grand jury was investigating possible criminal activity by HAMAS, and warned that he would be prosecuted if he failed to testify. Alwan nonetheless refused to testify. The "natural and probable effect" of his refusal was to deprive the grand jury of information it lawfully sought, and thus, to interfere with the due administration of justice. Id.

Alwan insists his objective in refusing to testify before the grand jury was not to obstruct justice, but to "avoid future harm, which he believed would be inflicted upon him and his family upon his return to the West bank via Israel". Alwan's argument pertains to motive, not specific intent, and thus is not relevant. Whatever underlying purpose he may have had, Alwan unquestionably intended to undertake the act of refusing to testify with full knowledge that it would "impede the due administration of justice". That is all the law requires in order to show specific intent. Thus, we find that Alwan's contempt conviction under § 401(3) likewise satisfies all the elements necessary for conviction under § 1503.

We therefore conclude that the BIA's determination that Alwan's offense was one "relating to obstruction of justice", and

15

thus an "aggravated felony", was based on a "permissible interpretation" of 8 U.S.C. § 1227(a)(2)(A)(iii). See <u>Aguirre-Aguirre</u>, 526 U.S. at 424.

Consequently, we hold that Alwan was "an alien ... removable by reason of having committed a criminal offense covered in section ... 1227(a)(2)(A)(iii)" and thus, that the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(C) applies and prevents us from reviewing the BIA's final order of removal. As a result, although we have -- for all intents and purposes -- reviewed the merits of Alwan's petition with regard to his nationality claim and the "aggravated felony" requirement, we hold that we lack jurisdiction to review his claim that removal should have been withheld under the Convention Against Torture and § 241(b)(3)(A) of the INA. 8 U.S.C. § 1231(b)(3)(A).

### III

In sum, we hold that the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(C) applies and precludes our review of the BIA's final order of removal against Alwan. Accordingly, the petition for review is

DISMISSED.