# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IRMA RENTERIA-MORALES,
                           *Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,
                           *Respondent.*

No. 04-74742

Agency No.
A92-202-968

MARIA JESUS RIVERA DE ALVARADO,
                           *Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,
                           *Respondent.*

No. 06-73283

Agency No.
A17-970-844

ORDER AND
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 9, 2007—San Francisco, California

Filed December 12, 2008

Before: Sidney R. Thomas, Richard C. Tallman, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta;
Partial Concurrence and Partial Dissent by Judge Tallman

16311

## COUNSEL

*Irma Renteria-Morales v. Mukasey*, 04-74742

Martin R. Guajardo (brief) and Marty Robles (argued), Law Office of Martin R. Guajardo, San Francisco, California, for the petitioner.

Marshall Tamor Golding (brief) and Ann Carroll Varnon (argued), United States Department of Justice, Civil Division, Washington, D.C., for the respondent.

*Maria Jesus Rivera de Alvarado v. Mukasey*, 06-73283

Carol Dvorkin, San Francisco, California, for the petitioner.

David Schor, United States Department of Justice, Civil Division, Washington, D.C., for the respondent.

## ORDER

The opinion filed July 10, 2008, and appearing at 532 F.3d 949 is hereby withdrawn. The superseding opinion will be filed simultaneously with this Order. The parties may file an additional petition for rehearing or rehearing en banc.

## OPINION

IKUTA, Circuit Judge:

The two petitions for review consolidated in this opinion[1] present the question whether a conviction for failure to appear in court in violation of 18 U.S.C. § 3146[2] meets the definition of an aggravated felony in 8 U.S.C. § 1101(a)(43)(S)[3] or 8

---

[1]These petitions are ordered consolidated for purposes of this disposition.

[2]18 U.S.C. § 3146 states, in pertinent part:

(a)   Offense.— Whoever, having been released under this chapter knowingly—

(1) fails to appear before a court as required by the conditions of release; or

(2) fails to surrender for service of sentence pursuant to a court order;

shall be punished as provided in subsection (b) of this section.

[3]Under 8 U.S.C. § 1101(a)(43)(S), the definition of "aggravated felony" includes "an offense relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year."

U.S.C. § 1101(a)(43)(T).[4] Applying the categorical approach prescribed by *Taylor v. United States*, 495 U.S. 575, 600-02 (1990), we conclude that a violation of § 3146 qualifies as the generic crime of "obstruction of justice" under § 1101(a)(43)(S) but does not qualify as the generic crime of "failure to appear" under § 1101(a)(43)(T). We also conclude that a petitioner's prior conviction qualifies as an aggravated felony under § 1101(a)(43)(S) only if the petitioner has been sentenced to a term of imprisonment of "at least one year."

I

Irma Renteria-Morales (Renteria) and Maria Jesus Rivera de Alvarado (Rivera), both natives and citizens of Mexico, petition for review of a decision by the Board of Immigration Appeals (BIA) affirming a final order of removal.

A

Renteria became a lawful permanent resident of the United States in 1990. On January 13, 1998, Renteria pleaded guilty to a violation of 18 U.S.C. § 3146. The judgment entered by the district court stated: "The defendant is convicted of the offense(s) of: violating Title 18, United States Code, Sections 3146, Bail Jumping, as charged in the Information filed herein." The information alleged:

> That on or about July 20, 1992, at or near Tucson, in the District of Arizona, IRMA LINDA RENTERIA-MORALES, after having been released on or about March 2, 1992, pursuant to Chapter 207 of Title 18 of the United States Code, in connection with a charge of possession with intent to distribute

---

[4]Under 8 U.S.C. § 1101(a)(43)(T), the definition of "aggravated felony" includes "an offense relating to a failure to appear before a court pursuant to a court order to answer to or dispose of a charge of a felony for which a sentence of 2 years' imprisonment or more may be imposed."

marijuana, in violation of Title 21 United States Code § 841(a)(1), an offense punishable by imprisonment for a term of not more than five (5) years, and having been directed to appear before the District Court of Arizona at Tucson, Arizona, on July 20, 1992, wilfully did fail to appear as required;

All in violation of Title 18 United States Code Section 3146.

On March 3, 1998, the government filed a notice to appear alleging that Renteria was subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii)[5] as an aggravated felon due to her violation of 18 U.S.C. § 3146. The government claimed that a violation of § 3146 constituted the aggravated felony of "failure to appear" under 8 U.S.C. § 1101(a)(43)(T). Over Renteria's objections, the immigration judge (IJ) agreed with the government's interpretation of § 1101(a)(43)(T) and pretermitted Renteria's application for cancellation of removal. *See* 8 U.S.C. § 1229b(a)(3). Renteria appealed to the BIA, which affirmed the IJ's determination without an opinion. Renteria timely filed a petition for review with this court.

B

Rivera became a lawful permanent resident of the United States in 1967. In 1973, she was indicted by a grand jury for conspiracy to illegally import heroin, illegal importation of heroin, conspiracy to possess a controlled substance with intent to distribute, and possession of a controlled substance with intent to distribute. Rivera pleaded not guilty and was released on bail. While on bail, she fled the United States. The government filed a second indictment charging Rivera with violation of 18 U.S.C. § 3146[6] in August 1973. In 2004,

---

[5]8 U.S.C. § 1227(a)(2)(A)(iii) states: "Any alien who is convicted of an aggravated felony at any time after admission is deportable."

[6]Although the indictment charged Rivera with a violation of 18 U.S.C. § 3150, this statute was repealed by the Bail Reform Act of 1984, Pub. L.

Rivera was arrested while crossing the border from Mexico into the United States based on an outstanding warrant for failure to appear. Rivera pleaded guilty to a violation of 18 U.S.C. § 3146, and the government dismissed the drug charges. Rivera was sentenced to a $100.00 assessment and a term of imprisonment of twelve months and one day.

In 2005, the government filed a notice to appear alleging that Rivera was subject to removal on two grounds: (1) under 8 U.S.C. § 1182(a)(2)(A)(i)(I), for being an alien who committed a crime of moral turpitude; and (2) under 8 U.S.C. § 1182(a)(2)(C), for being an alien who "the Attorney General knows or has reason to believe . . . is or has been a knowing aider, abettor, assister, conspirator, or colluder with others in the illicit trafficking in any such controlled . . . substance." 8 U.S.C. § 1182(a)(2)(C)(i). On November 14, 2005, Rivera filed an application for cancellation of removal.

The IJ sustained the two charges of removability and pretermitted and denied Rivera's application for cancellation of removal on the ground that her conviction under 18 U.S.C. § 3146 qualified as an aggravated felony under 8 U.S.C. § 1101(a)(43)(S) as "an offense relating to obstruction of justice." *See* 8 U.S.C. § 1229b(a)(3).

Rivera appealed to the BIA, challenging only the denial of her application for cancellation of removal. The BIA affirmed the IJ in a reasoned opinion, agreeing "that the respondent was convicted of an aggravated felony because the offense of bail jumping falls within the definition of an obstruction of justice crime under section 101(a)(43)(S) of the Immigration and Nationality Act." Rivera timely filed a petition for review with this court.

No. 98-473, 98 Stat. 1976 (1984), and replaced with a substantially identical statute, 18 U.S.C. § 3146. To avoid confusion, we refer to the statute of conviction as 18 U.S.C. § 3146 throughout this opinion.

## II

We have jurisdiction under 8 U.S.C. § 1252(a) to review the legal question whether a conviction underlying an order of removal, or the denial of relief from an order of removal, constitutes an aggravated felony. *See Li v. Ashcroft*, 389 F.3d 892, 895 (9th Cir. 2004). If the BIA conducted "an independent review . . . we review the BIA's decision and not that of the IJ." *Sinotes-Cruz v. Gonzales*, 468 F.3d 1190, 1194 (9th Cir. 2006). However, where the BIA summarily affirms the holding of the IJ without opinion, we review the IJ's decision as the final agency determination. *See Falcon Carriche v. Ashcroft*, 350 F.3d 845, 849 (9th Cir. 2003).

**[1]** In analyzing Renteria's petition, we must determine whether a conviction for failure to appear in court in violation of 18 U.S.C. § 3146 constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43)(T). In order to meet the definition of "aggravated felony" under this subsection, the offense of conviction must be "an offense relating to a failure to appear before a court pursuant to a court order to answer to or dispose of a charge of a felony for which a sentence of 2 years' imprisonment or more may be imposed." 8 U.S.C. § 1101(a)(43)(T).

In analyzing Rivera's petition, we must determine whether a conviction for failure to appear in court in violation of § 3146 constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43)(S). In order to meet the definition of "aggravated felony" in this subsection, the offense of conviction must be (1) "an offense relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness," 8 U.S.C. § 1101(a)(43)(S); and (2) an offense "for which the term of imprisonment is at least one year." *Id.*

If a violation of § 3146 meets the definition set forth in § 1101(a)(43)(S) or (T), it qualifies as an aggravated felony and makes the alien removable under 8 U.S.C.

§ 1227(a)(2)(A)(iii). It also renders the alien ineligible for cancellation of removal pursuant to 8 U.S.C. § 1229b(a)(3).

Our analysis requires two different considerations. First, we must determine whether the crime of conviction contains all the elements of the generic federal offense. To make this determination, we apply the categorical approach set forth in *Taylor*, 495 U.S. 575, to the Immigration and Nationality Act (INA). *See Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1125 (9th Cir. 2006) (en banc). Using the categorical approach, we determine the generic federal definition of "obstruction of justice" and "failure to appear" in § 1101(a)(43)(S) and (T), respectively. Because § 1101(a)(43) is part of the INA, we must defer to the BIA's articulation of the generic federal definition "if the statute is silent or ambiguous with respect to the specific issue before the agency and the BIA's interpretation is 'based on a permissible construction of the statute.' " *Parrilla v. Gonzales*, 414 F.3d 1038, 1041 (9th Cir. 2005) (quoting *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999)). We accord *Chevron* deference where there is "binding agency precedent on-point (either in the form of a regulation or a published BIA case)." *Kharana v. Gonzales*, 487 F.3d 1280, 1283 n.4 (9th Cir. 2007); *see Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-44 (1984).

After determining the elements of the generic crimes listed in § 1101(a)(43) (S) and (T), the next step in the *Taylor* analysis is to identify the elements of the specific crime of conviction—in this case, 18 U.S.C. § 3146. We do not defer to the BIA's interpretations of state law or provisions of the federal criminal code. *Parrilla*, 414 F.3d at 1041. Rather, we review de novo whether the specific crime of conviction meets the INA's definition of an aggravated felony. *Li*, 389 F.3d at 895; *Randhawa v. Ashcroft*, 298 F.3d 1148, 1151 (9th Cir. 2002). If the elements of the specific crime of conviction are narrower than or the same as the elements of the generic crime, then the specific crime of conviction categorically

qualifies as an aggravated felony under § 1101(a)(43). *See Fernandez-Ruiz*, 466 F.3d at 1125.

If the elements of the specific crime of conviction are broader than the elements of the generic crime listed in § 1101(a)(43), we may "go beyond the mere fact of conviction" and consider whether the petitioner was necessarily convicted of all the elements of the generic crime. *Taylor*, 495 U.S. at 602. In making this determination, we are permitted to "conduct a limited examination of documents in the record of conviction." *Ferreira v. Ashcroft*, 390 F.3d 1091, 1095 (9th Cir. 2004) (internal quotation marks omitted). Where the defendant pleaded guilty to the offense, the examination of the record is "limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005); *see also United States v. Snellenberger*, ___ F.3d ___, 2008 WL 4717190, at *2 (9th Cir. Oct. 28, 2008) (en banc) (holding clerk's minute order, prepared by neutral officer of the court and subject to examination and challenge by defendant, sufficiently reliable under *Shepard* to consider in modified categorical analysis). "If the record of conviction does not establish that the offense the petitioner committed qualifies as an aggravated felony, the government has not met its burden of proving that the defendant committed an aggravated felony." *Ferreira*, 390 F.3d at 1095.

Second, if we determine that the specific offense of conviction is categorically a generic offense specified in § 1101(a)(43) (or if the petitioner necessarily was convicted of all elements of the generic offense), we then consider any statutory requirements of the aggravated felony defined in § 1101(a)(43) that are not elements of the generic federal offense. The categorical and modified categorical approaches are applicable only to elements of the criminal offense. *See Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1067-68 (9th Cir.

RENTERIA-MORALES v. MUKASEY 16323

2007) (en banc) ("The categorical approach requires us to make a categorical comparison of the elements of the statute of conviction to the generic definition of the crime, and decide whether the conduct proscribed by the statute [of conviction] is broader than, and so does not categorically fall within, this generic definition." (alterations and internal quotation marks omitted)); *Shepard*, 544 U.S. at 17 (explaining that the modified categorical approach ensures that "a jury . . . was actually required to find all the elements of the generic offense" (internal quotation marks omitted)).

The second component of § 1101(a)(43)(S), that the offense be one "for which the term of imprisonment is at least one year," is such a statutory requirement, rather than an element of the generic federal offense.[7] A sentence is not an element of a criminal offense. *See, e.g.*, *Jones v. United States*, 526 U.S. 227, 232 (1999) ("[E]lements [of an offense] must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt."). Additionally, neither the factors that influence a criminal sentence, nor the sentence itself, need be submitted to a jury. *See Harris v. United States*, 536 U.S. 545, 549 (2002) ("After the accused is convicted, the judge may impose a sentence within a range provided by statute, basing it on various facts relating to the defendant and the manner in which the offense was committed. Though these facts may have a substantial impact on the sentence, they are not elements, and are thus not subject to the Constitution's indictment, jury, and proof requirements."); *Apprendi v. New Jersey*, 530 U.S. 466, 481, 490 (2000) (holding that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted

---

[7]Unlike § 1101(a)(43)(S), § 1101(a)(43)(T) does not include statutory requirements that are not part of the generic offense. Although § 1101(a)(43)(T) requires the underlying felony for which the petitioner failed to appear to be one "for which a sentence of 2 years' imprisonment or more may be imposed," it does not require that the petitioner be sentenced for a specified term of imprisonment, or that the offense of conviction authorize a sentence of a specified term.

to a jury, and proved beyond a reasonable doubt," but clarifying that judges may "exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute.").

Because a sentence authorized by or subsequently imposed for a criminal offense is not an element of that offense, we do not use the categorical and modified categorical approach to determine whether a petitioner has met any sentencing requirement specified in § 1101(a)(43). Instead, we use tools of statutory construction to evaluate whether the petitioner's prior crime of conviction meets any statutory requirements in § 1101(a)(43) that are not elements of a generic federal crime.

Based on this framework, we consider each appeal in turn.

## III

We first address Renteria's argument that her conviction for failure to appear under 18 U.S.C. § 3146 does not constitute an aggravated felony under 8 U.S.C. § 1101(a)(43)(T).

**[2]** We apply the *Taylor* analysis to determine whether the crime of conviction also contains all the elements of the generic federal offense. The first step under *Taylor* is to determine the elements of the generic federal crime. In this case, the elements of the generic federal crime are clearly set out in § 1101(a)(43)(T) itself. The subsection includes any offense "relating to" the following elements: (1) a failure to appear before a court; (2) pursuant to a court order; (3) to answer to or dispose of a charge of a felony; (4) where the felony was one for which a sentence of two years' imprisonment or more may be imposed. We have not found, nor has the government cited, any precedential BIA decision providing further interpretation of this generic federal crime.

We next turn to the specific crime of conviction to determine whether the elements of § 3146 are narrower than or the

same as the elements of the generic crime, § 1101(a)(43)(T). Section 3146 provides, in pertinent part:

>    (a) Offense.—Whoever, having been released under this chapter knowingly—
>
>    >    (1) fails to appear before a court as required by the conditions of release; or
>    >
>    >    (2) fails to surrender for service of sentence pursuant to a court order;
>
>    shall be punished as provided in subsection (b) of this section.
>
>    (b) Punishment.—(1) The punishment for an offense under this section is—
>
>    >    (A) if the person was released in connection with a charge of, or while awaiting sentence, surrender for service of sentence, or appeal or certiorari after conviction for—
>    >
>    >    >    (i) an offense punishable by death, life imprisonment, or imprisonment for a term of 15 years or more, a fine under this title or imprisonment for not more than ten years, or both;
>    >    >
>    >    >    (ii) an offense punishable by imprisonment for a term of five years or more, a fine under this title or imprisonment for not more than five years, or both;
>    >    >
>    >    >    (iii) any other felony, a fine under this title or imprisonment for not more than two years, or both; or

(iv) a misdemeanor, a fine under this title or imprisonment for not more than one year, or both; and

(B) if the person was released for appearance as a material witness, a fine under this chapter or imprisonment for not more than one year, or both.

**[3]** Although § 3146 includes all the elements of the generic crime, we conclude that the elements of § 3146 are broader than the elements of § 1101(a)(43)(T). For example, a necessary element of an offense included in § 1101(a)(43)(T) is that the defendant must have failed to appear in connection with a felony, where the felony was one for which a sentence of two years' imprisonment or more could be imposed. However, under § 3146, the defendant could have failed to appear in connection with a misdemeanor, 18 U.S.C. § 3146(b)(1)(A)(iv), or could have failed to appear as a material witness. *Id.* § 3146(b)(1)(B). Additionally, a failure to appear as a material witness would not be a failure "to answer to or dispose of" a particular charge, as required by § 1101(a)(43)(T). Finally, a defendant could have failed to appear as required by his or her conditions of release, in violation of § 3146(a)(1), but not have failed to appear pursuant to any particular court order, as required by § 1101(a)(43)(T). Accordingly, a violation of § 3146 is not categorically an aggravated felony for purposes of § 1101(a)(43)(T).

**[4]** We must therefore apply the modified categorical approach to determine if the petitioner was necessarily convicted of all the elements of § 1101(a)(43)(T). In making this determination, we may review the judgment and the charging document (the information) contained in Renteria's record of conviction. *See Shepard,* 544 U.S. at 26; *see also Ferreira,* 390 F.3d at 1095. It is undisputed that these are the only documents in Renteria's record that are cognizable for purposes of

our analysis.[8] As noted above, the judgment states only that Renteria pleaded guilty to violating "Title 18, United States Code, Sections 3146, Bail Jumping, as charged in the Information filed herein." The information provides that Renteria was released "in connection with a charge of possession with intent to distribute marijuana," an offense punishable by five years' imprisonment, and "having been directed to appear before the District Court of Arizona at Tucson, Arizona, on July 20, 1992, wilfully did fail to appear as required."

According to Renteria, the record does not establish that she was necessarily convicted of the second element of § 1101(a)(43)(T) (i.e., that she failed to appear before a court "pursuant to a court order") or the third element (i.e., that she failed to appear "to answer to or dispose of a charge of a felony").[9] First, Renteria notes that the information charges her with failure to appear as "directed," and does not mention a court order. Renteria argues that § 3146(a)(1) (prohibiting failure to appear "as required by the conditions of release") allows the government to obtain a conviction for violation of § 3146 without proving that the offender had violated a court order. To support this interpretation, Renteria notes that Congress chose to use the term "court order" in § 3146(a)(2) (prohibiting the failure to surrender for service of sentence "pursuant to a court order"), but did not use that term in § 3146(a)(1), which raises the inference that Congress intended § 3146(a)(1) to be broader than § 3146(a)(2).

---

[8]The record also contains two documents labeled "Criminal Minutes" and "Magistrate Judge's Minutes." We need not determine whether these are judicial records on which we may properly rely in applying the modified categorical approach, *see Snellenberger*, 2008 WL 4717190, at *2, because the documents provide no details regarding Renteria's prior crime of conviction, but merely state that she was convicted of violating 18 U.S.C. § 3146.

[9]The record does establish that Renteria was necessarily convicted of the first and fourth elements of § 1101(a)(43)(T) (i.e., she failed to appear before a court, and the underlying offense was a felony punishable by a sentence of two years' imprisonment or more). Renteria does not dispute this conclusion.

Second, Renteria notes that the information does not establish that she was convicted of a failure to appear "to answer to or dispose of a charge," the third element of § 1101(a)(43)(T). Renteria argues that she could have been convicted for failing to appear "for service of sentence," as contemplated in § 3146(a)(2), or for failing to appear as a material witness, as contemplated in § 3146(b)(1)(B).

The government contends that it is reasonable to infer from the information and the statute of conviction that Renteria failed to appear before a court "pursuant to a court order," and failed to appear "to answer to or dispose of a charge of a felony." With respect to the "court order" element, the government asserts that only a judicial officer has authority to direct Renteria to appear, and the judicial officer's direction would be a court order. With respect to the second element, the government notes that the information did not expressly allege that Renteria's conviction was for failing to appear for service of a sentence or as a material witness. From this silence, the government argues, we can reasonably infer that Renteria's conviction under § 3146 was to answer to or dispose of a charge. The government concludes, therefore, that the record does establish that Renteria was convicted of the second and fourth elements of § 1101(a)(43)(T).

[5] Although the inferences suggested by the government may be reasonable, the government has not established that such inferences are necessary. On their face, the judicially noticeable documents do not establish that Renteria was under a "court order" or that she was ordered to appear "to answer to or dispose of" a charge. The government has not established that the phrase "having been directed to appear" in the information necessarily means that a court had issued an order. Nor has the government established that the phrase "released . . . in connection with a charge" of a substantive crime necessarily means that the person directed to appear was charged with that crime, rather than being a material witness to that crime.

**[6]** The dissent points out that under 18 U.S.C. § 3142, judicial officers have authority to order the release of pretrial detainees, subject to certain conditions. The dissent reasons that Renteria was probably subject to such a court order, which would likely have ordered her to appear before the court at the appropriate time. Again, such inferences are reasonable, but they are not necessary. The record does not establish that Renteria was a pretrial detainee released pursuant to § 3142, or that she was under a court order to make an appearance.

**[7]** Under the modified categorical approach, the government must establish that the prior conviction necessarily involved, and the allowable documents necessarily established, facts equating to the generic crime. *See Shepard,* 544 U.S. at 24; *see also Sandoval-Lua v. Gonzales*, 499 F.3d 1121, 1131 (9th Cir. 2007) ("[T]he Supreme Court's holdings in *Taylor* and *Shepard . . .* both stress that a predicate conviction qualifies as a generic crime under the modified categorical approach only if the record of conviction shows the jury 'necessarily' found all of the generic elements, or the defendant 'necessarily' admitted all of the generic elements in a plea." (citations omitted)). On the present record, we cannot say with certainty that Renteria was convicted of all the elements of § 1101(a)(43)(T). "If the record of conviction does not establish that the offense the petitioner committed qualifies as an aggravated felony, the government has not met its burden of proving that the defendant committed an aggravated felony." *Ferreira*, 390 F.3d at 1095. The government's interpretation of the judgment and information are inadequate to carry its burden of establishing that Renteria was convicted of all the elements of the generic crime described in § 1101(a)(43)(T). We therefore grant Renteria's petition for review.

## IV

**[8]** We next consider Rivera's argument that her conviction for "failure to appear" under 18 U.S.C. § 3146 does not meet

the definition of the generic crime of "obstruction of justice" in 8 U.S.C. § 1101(a)(43)(S).

**[9]** We apply the *Taylor* analysis to determine whether the elements of "failure to appear" under § 3146 necessarily include the elements of "obstruction of justice." Following the categorical approach prescribed by *Taylor*, we first determine the generic definition of obstruction of justice. *See Taylor*, 495 U.S. at 598-99. Unlike § 1101(a)(43)(T), § 1101(a)(43)(S) does not clearly set forth the elements of the generic federal crime. Because the INA does not define the phrase "offense relating to obstruction of justice," we must determine whether there is any "binding agency precedent on-point" which does define that phrase. *Kharana*, 487 F.3d at 1283 n.4; *see also Parrilla*, 414 F.3d at 1041 (internal quotation marks omitted). As acknowledged by the government and Rivera, the BIA has interpreted the elements of a generic obstruction-of-justice offense under § 1101(a)(43)(S) in a precedential decision, *Matter of Espinoza-Gonzalez*, 22 I. & N. Dec. 889 (BIA 1999). Based on its review of the crimes listed in chapter 73 of title 18 of the U.S. Code, entitled "Obstruction of Justice," and on the guidance provided by the Supreme Court in *United States v. Aguilar*, 515 U.S. 593 (1995) (analyzing the elements of 18 U.S.C. § 1503), the BIA articulated both an actus reus and mens rea element of the generic definition of such crimes for purposes of § 1101(a)(43)(S). *Espinoza-Gonzalez*, 22 I. & N. Dec. at 892-93. First, the BIA held that obstruction of justice crimes include "either active interference with proceedings of a tribunal or investigation, or action or threat of action against those who would cooperate in the process of justice." *Id.* at 893. Second, the BIA held that such crimes include an intent element, defined as a "specific intent to interfere with the process of justice." *Id.*

In considering the BIA's construction of § 1101(a)(43)(S), a statute it administers, we must comply with the principles of deference articulated in *Chevron* and uphold the BIA's definition of "obstruction of justice" offenses if it " 'is based on

a permissible construction of the statute.' " *Aguirre-Aguirre*, 526 U.S. at 424 (quoting *Chevron*, 467 U.S. at 843). Here the BIA acted reasonably in deriving the definition of "obstruction of justice" for purposes of § 1101(a)(43)(S) from the body of federal statutes imposing criminal penalties on obstruction-of-justice offenses. *See Parrilla*, 414 F.3d at 1041. Accordingly, in determining whether the specific crime of conviction is an obstruction-of-justice offense for purposes of § 1101(a)(43)(S), we rely on the BIA's definition.[10]

We now turn to Rivera's specific crime of conviction: In this case, the question is whether all elements of § 3146—namely, being released and knowingly failing to appear before a court as required by the conditions of release, or failing to surrender for service of sentence pursuant to a court order—are included in and narrower than the elements of obstruction of justice under § 1101(a)(43)(S). *See Taylor*, 495 U.S. at 599.

[10] Section 3146 clearly includes the requisite actus reus: an "active interference with proceedings of a tribunal or investigation, or action or threat of action against those who would cooperate in the process of justice." *Espinoza-Gonzalez*, 22 I. & N. Dec. at 893. Failure to appear before a court as required by the conditions of release, and failure to obey a court order to surrender for service, both constitute active interference with the proceedings of a tribunal. Because there is no meaningful distinction between personally failing to appear for court proceedings and hindering a third party from appearing for such proceedings, see 18 U.S.C. § 1512

---

[10]Rivera argues that another critical element of a generic obstruction of justice crime is that it must involve violation of a court order, citing *Alwan v. Ashcroft*, 388 F.3d 507, 514-515 (5th Cir. 2004). We reject this argument. Although the specific crime in *Alwan*, "criminal contempt," involved disobedience of a court order, *Alwan* did not hold that violation of a court order was a necessary element of obstruction of justice. Rivera also cites to *Barnaby v. Reno*, 142 F. Supp. 2d 277 (D. Conn. 2001), which is irrelevant because it analyzed § 1101(a)(43)(T), not (S).

("[t]ampering with a witness, victim, or an informant," a chapter 73 "Obstruction of Justice" offense), we reject Rivera's attempt to distinguish a personal failure to appear as constituting only "passive" interference.

**[11]** Section 3146 also includes the requisite mens rea: the "specific intent to interfere with the process of justice." *Espinoza-Gonzalez*, 22 I. & N. Dec. at 893.[11] By its terms, § 3146 prohibits a defendant from knowingly failing to show up for a judicial proceeding after having been ordered or directed to do so. Under these circumstances, a defendant necessarily knows that failure to appear will "affect the judicial proceeding." *Aguilar*, 515 U.S. at 599. We have gone further and construed § 3146 as requiring a willful violation of a requirement to appear for a judicial proceeding. *See, e.g., Weaver v. United States*, 37 F.3d 1411, 1412-13 (9th Cir. 1994) ("To establish a violation of 18 U.S.C. § 3146, the government ordinarily must prove that the defendant (1) was released pursuant to that statute, (2) was required to appear in court, (3) knew that he was required to appear, (4) failed to appear as required, and (5) was willful in his failure to

---

[11]In the context of federal obstruction of justice crimes, courts have defined the specific intent element broadly. *See Pettibone v. United States*, 148 U.S. 197, 207 (1893) (indicating that the intent to take a wrongful act that will have the "natural and probable consequence" of obstructing justice is an "evil intent" to obstruct justice); *see also United States v. Hopper*, 177 F.3d 824, 830-31 (9th Cir. 1999) (indicating that the elements of an obstruction-of-justice offense under 18 U.S.C. § 1505 are satisfied where the defendants had acted to prevent collection of their tax debt, and knew that "the natural and probable effect" of their actions would be to interfere with IRS proceedings (internal quotations omitted)); *United States v. Gallimore*, 491 F.3d 871, 876 (8th Cir. 2007) (holding that the only intent necessary to convict a defendant under 18 U.S.C. § 1513(b) for retaliating against a witness, victim, or informant "was an intent to retaliate" (internal quotations omitted)). Because we have interpreted § 3146 as requiring the government to prove that the defendant willfully failed to appear, *see infra* p. 16332, we need not consider whether these interpretations of the mens rea element of specific federal obstruction of justice crimes are part of the generic federal crime of "obstruction of justice."

appear."); *see also United States v. Smeaton*, 762 F.2d 796, 797-98 (9th Cir. 1985) (recognizing willful failure to appear as an essential element of the bail-jumping offense). In this context, "[w]illfulness requires a specific intent to do something the law forbids; a general intent to commit the proscribed act is not enough." *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980). A defendant cannot be convicted of § 3146 "if it is committed as a result of inadvertence or mistake." *Id.*; *see also* § 3146(c) (stating that it can be an affirmative defense to a conviction under § 3146 that a defendant was prevented from appearing in court due to uncontrollable circumstances). Thus a violation of § 3146 necessarily includes the intentional failure to appear in court, knowing that one's presence is required either for trial or execution of sentence.

Our conclusion that the conduct prohibited by § 3146 constitutes an intentional interference with judicial proceedings is consistent with our decision in *United States v. Draper*, 996 F.2d 982, 984-86 (9th Cir. 1983). There, we held that a district court did not err in enhancing the sentence of a defendant who fled prior to sentencing under U.S.S.G. § 3C1.1, the relevant version of which provided that, "[i]f the defendant *willfully* obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, [then] increase the offense level by 2 levels." *Id*. at 984 (alterations in original) (internal quotation marks omitted). We agreed with the district court "that defendant obstructed justice because he violated the conditions of his release from the community corrections center by failing to report to the corrections center, thereby impeding the administration of justice." *Id.* (internal quotation marks omitted). We noted that the defendant attempted "to escape justice" after having submitted to judicial process, making his offense distinguishable from fleeing arrest, which did not constitute obstruction of justice. *Id.* at 985-86 (internal quotation marks omitted).

**[12]** Rivera attempts to distinguish her conviction of violating § 3146 from other obstruction-of-justice offenses on several grounds. She argues that the offense of failing to appear is equivalent to fleeing arrest, which *Draper* deemed not to constitute an obstruction of justice, or is analogous to (or less serious than) misprision of a felony, which *Espinoza-Gonzalez* deemed not to be an obstruction of justice. *See Draper*, 996 F.2d at 985-86; *Espinoza-Gonzalez*, 22 I. & N. Dec. at 892. We disagree. As we previously noted, the intentional failure to appear in court when one's presence has been required interferes with the proceedings of a tribunal, and as such meets the generic federal definition of obstruction of justice. Although misprision of felony or fleeing arrest may obstruct justice in a general sense, neither act interferes with judicial process and thus both offenses are different in kind than generic obstruction-of-justice offenses. *Cf. Draper*, 996 F.2d at 986 ("[T]he defendant must have been submitted, willfully or otherwise, to the due process of law before the obstruction adjustment can obtain."). Further, as *Espinoza-Gonzalez* notes, misprision of felony does not require "proof that the defendant acted with a motive, or even knowledge, of the existence of the work of an investigation or tribunal." 22 I. & N. Dec. at 893.**[12]** Because § 3146 fulfills the elements of the generic offense of "obstruction of justice," we conclude that a conviction under § 3146 is categorically "an offense relating to obstruction of justice" under § 1101(a)(43)(S).

We next consider the sentencing component of § 1101(a)(43)(S), which requires Rivera's crime of conviction

---

**[12]**Rivera also argues that her violation of § 3146 does not constitute a generic obstruction-of-justice offense because she was not convicted of the crime for which she was released on bail. This fact sheds no light on the question whether the crime of which she was convicted constitutes an obstruction-of-justice offense. In addition, her final argument, that her conviction does not constitute an aggravated felony under § 1101(a)(43)(T), is irrelevant, because the BIA determined that her bail-jumping offense was an obstruction of justice crime under § 1101(a)(43)(S), not § 1101(a)(43)(T).

to be one "for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(S). When we previously interpreted language in § 1101(a)(43) requiring that a crime of conviction be one "for which the term of imprisonment is at least one year," we held that this phrase refers to the actual sentence imposed by the judge on the defendant convicted of the predicate offense, rather than the "potential sentence that the judge could have imposed." *Alberto-Gonzalez v. INS*, 215 F.3d 906, 909 (9th Cir. 2000). Noting 8 U.S.C. § 1101(a)(48)(B)'s definition that "[a]ny reference to a term of imprisonment . . . is deemed to include the period of incarceration or confinement ordered by a court of law,"[13] we reasoned that this language indicated Congress's intent to use the phrase "a term of imprisonment" to refer to "the actual sentence imposed by the judge." *Alberto-Gonzalez*, 215 F.3d at 909. By contrast, we noted that other aggravated felonies defined in § 1101(a)(43) turn on the length of the sentence that "*may* be imposed." *Id.* at 909; *see, e.g.,* § 1101(a)(43)(J) ("an offense described in section 1962 of Title 18 (relating to racketeer influenced corrupt organizations), or an offense described in section 1084 (if it is a second or subsequent offense) or [section] 1955 of that title (relating to gambling offenses), for which a sentence of one year imprisonment or more *may* be imposed" (emphasis added)). We concluded that the requirement that a specified sentence "may be imposed" referred to the maximum penalty authorized for the predicate crime. *See Alberto-Gonzalez*, 215 F.3d at 909. Because Congress used the different phrases to define different aggravated felonies in § 1101(a)(43), we inferred that Congress "was aware of the difference between the statutory maximum penalty and the sentence actually imposed," and used "term of

---

[13]8 U.S.C. § 1101(a)(48)(B) states:

Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part.

imprisonment" to refer to the latter. *Id.* at 909-10; *see also United States v. Corona-Sanchez*, 234 F.3d 449, 455 (9th Cir. 2000). This approach follows the approach adopted by the Third Circuit. *United States v. Graham*, 169 F.3d 787, 791 (3rd Cir. 1999).

**[13]** Accordingly, in order to determine whether Rivera meets the definition of "aggravated felony" listed in § 1101(a)(43)(S), we must determine whether "the actual sentence imposed [on her] by the trial judge," *Alberto-Gonzalez*, 215 F.3d at 910, for the crime of conviction equals or exceeds the term of imprisonment identified in § 1101(a)(43)(S), which is at least one year. Here, Rivera was sentenced to a term of imprisonment of twelve months and one day, and therefore meets the statutory sentencing requirement in § 1101(a)(43)(S).

**[14]** Because Rivera's prior conviction under § 3146 constitutes the generic offense of "obstruction of justice" under the categorical approach, and because Rivera was actually sentenced to a term of imprisonment of at least one year, the requirements of § 1101(a)(43)(S) have been met. The BIA did not err in affirming the IJ's holding that Rivera's bail-jumping violation qualified as an aggravated felony under § 1101(a)(43)(S). We therefore deny her petition for review.

V

We conclude that the IJ and BIA correctly deemed Rivera's prior conviction to be an aggravated felony under § 1101(a)(43)(S), but the IJ incorrectly deemed Renteria's prior conviction to be an aggravated felony under § 1101(a)(43)(T). Renteria's Petition for Review is **Granted**; Rivera's Petition for Review is **Denied**.

TALLMAN, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from the majority's erroneous conclusion that, under the modified categorical approach, Irma Renteria-Morales's ("Renteria") conviction for bail jumping does not meet the elements of an aggravated felony as set forth in 8 U.S.C. § 1101(a)(43)(T). Because the court's holding is based on a fundamental misunderstanding of federal criminal procedure regarding mandatory conditions imposed on release from custody, and because the charging language of the bail jumping information compels the opposite conclusion, I would deny her petition for review. I concur in all other parts of the majority's opinion.

The criminal information charging Renteria with bail jumping states in relevant part,

> [t]hat . . . Renteria-Morales, after having been released on or about March 2, 1992 pursuant to Chapter 207 of Title 18 of the United States Code, in connection with a charge of possession with intent to distribute marijuana, an offense punishable by imprisonment for a term of not more than five (5) years, and having been directed to appear before the District Court for the District of Arizona at Tucson, Arizona, . . . wilfully did fail to appear.

This language is susceptible to only one reasonable interpretation: Renteria was charged with the felony of possession of marijuana with the intent to distribute, she was released under 18 U.S.C. § 3142 subject to various terms of release under the statute, and she was ordered by a judge to appear in court to answer or dispose of that charge, but she willfully failed to do so. That conduct renders her ineligible for relief from deportation.

Renteria's interpretation of the information, accepted by the majority, is unreasonable. She first contends that being "di-

rected to" appear by a judge is not synonymous with being "ordered to" appear. Her argument ignores Sections 3141 and 3142, contained within Chapter 207 of Title 18, which use the term "order" throughout. For example, Section 3141(a) states, "Pending trial. — A judicial officer authorized to order the arrest of a person under section 3041 of this title before whom an arrested person is brought *shall order* that such person be released or detained, pending judicial proceedings, under this chapter." (Emphasis added). Section 3142 provides, in relevant part,

> (a) In general. Upon the appearance before a judicial officer of a person charged with an offense, the judicial officer *shall issue an order* . . .

> (b)   Release on personal recognizance or unsecured appearance bond. The judicial officer *shall order* the pretrial release of the person . . .

> (c)   Release on conditions. (1) If the judicial officer determines that the release described in subsection (b) of this section will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer *shall order* the pretrial release of the person . . . .

(Emphasis added); *See* Fed. R. Crim. P. 5(d)(3) ("The judge must detain or release the defendant as provided by statute or these rules.").

In this case, when the United States magistrate judge "directed" Renteria to appear, he was necessarily exercising his authority under Section 3142 and "ordering" Renteria to appear. There is no other possibility. That the information happens to use the words "directed to appear" instead of "ordered to appear" is immaterial.

Renteria also argues that, based on the language of the information, someone else could have been charged with possession with the intent to distribute marijuana, and that Renteria may have been ordered to appear as a material witness in that case, but failed to do so. That too is an unreasonable reading of the documents we may consider under *Taylor*'s modified categorical approach. The information explicitly states that Renteria was released "in connection with a charge of possession with the intent to distribute marijuana." In other words, she was arrested on suspicion of committing that felony, then released. There is simply no reason to believe that someone else was charged with that felony, that Renteria was a material witness thereto, and that she failed to show up to testify. If Renteria had really failed to testify against someone else in a drug case, the information would have charged her failure to appear in response to a subpoena or agreement to testify. It did not.

Finally, Renteria argues, and the majority erroneously agrees, that, based on the language of the information, Renteria may have simply failed to show up for sentencing, as opposed to failing to show up "to answer or dispose of a charge of a felony." There are two problems with Renteria's argument.

First, the information cannot reasonably be read to mean that Renteria failed to show up for sentencing. If Renteria had really failed to show up for sentencing, then it follows that she would have already been found guilty of the crime described in the information. But the information does not say that. It simply says that she was "released . . . in connection with" that felony. If Renteria had been convicted of the felony charged and failed to show up for sentencing, the information would say so.

Second, even if Renteria is correct that the information may be fairly read to mean that she did not show up for sentencing, a person who fails to show up for sentencing has failed to

"dispose of a charge of a felony," within the meaning of 8 U.S.C. § 1101(a)(43)(T). A "charge of a felony" is not "disposed of" until the defendant is sentenced and judgment of conviction is entered. *See Barnaby v. Reno*, 142 F. Supp. 2d 277, 279 (D. Conn. 2001) (construing the defendant's failure to appear at sentencing as a failure to "dispose of" the charge within the meaning of 8 U.S.C. § 1101(a)(43)(T)); *see, e.g.,* Fed. R. App. P. 4(b) (noting that the final decision in a criminal case for purposes of appeal is the entry of the judgment of conviction). Thus, even under Renteria's and the majority's own reading of the information, she failed to "dispose of a charge of a felony."

Under the modified categorical approach applied to a plain reading of the documents we may consider, Renteria's conviction for bail jumping necessarily meets all of the elements of an aggravated felony as set forth in 8 U.S.C. § 1101(a)(43)(T). I would deny her petition for review.